ROBERT W. BALLIN, Appellant, v.
MARY W. BALLIN, Respondent.

No. 4467

April 27, 1962                                   371 P.2d 32

*George Rudiak,* of Las Vegas, for Appellant.

*Morse & Graves,* of Las Vegas, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

By motion, Robert Ballin sought to substantially reduce, or terminate installment payments for the support and maintenance of his former wife Mary. The lower court ruled that it lacked jurisdiction to do so. Robert Ballin appeals. We shall refer to the parties as Robert and Mary.

On March 21, 1956 Robert and Mary entered into a written agreement wherein it was recited that "the

parties desire to enter into Articles of Separation to settle their property and financial rights, to agree on amounts to be paid by the husband for the maintenance and support of the wife, * * *, and to remove all such matters from litigation." Each party was separately represented by counsel in negotiating and consummating the agreement. The agreement provided, in separate paragraphs, for the disposition and settlement of their real property, the disposition and settlement of their personal property, other than cash and securities, a payment to the wife of a lump sum based upon a disclosure of the value of the cash and securities belonging to the husband, and for the future handling of certain life insurance policies. In addition to the foregoing, the agreement provided: "The husband shall pay to the wife for her support and maintenance until she dies or until she remarries, whichever occurs first, the sum of sixteen thousand dollars ($16,000.00) per annum, payable in monthly installments of $1,333.33 in advance on the first of each month * * *. The support payments provided to be made to the wife hereunder, together with the transfers of property and principal payments provided for hereunder, shall be in full settlement and discharge of the wife's right to support and maintenance * * *."

Furthermore, the agreement provided that it was to be construed under New York law, and that it could not be altered or modified except "in writing and executed with the same formality of this Agreement by both parties."

Finally the agreement provided: "Nothing herein contained shall be construed to bar or prevent either party from suing for absolute divorce in any jurisdiction of the United States. In the event such a proceeding is instituted, it is agreed that this Agreement and the provisions hereof shall be incorporated by reference or otherwise in, and made a part of, any judgment or decree of divorce granted in such suit. Notwithstanding -the incorporation of this Agreement in any such decree or judgment, this Agreement shall not be merged in such decree or judgment, but shall survive the same and shall be binding and conclusive on the parties hereto,

their heirs, executors, administrators and assigns for all time."

Following consummation of said agreement, Mary came to Nevada, and on May 4, 1956, filed suit for divorce. Her complaint requested, among other things, "that the property settlement agreement entered into by and between the parties hereto on the 21st day of March, 1956 be ratified, approved, and confirmed to survive a decree of divorce entered herein." Robert, through an attorney duly authorized, answered the complaint. On May 4, 1956, after trial, the court entered a decree of divorce wherein it provided that "the certain property settlement agreement entered into by and between the parties hereto on the 21st day of March, 1956 be ratified, approved and confirmed to survive this decree of divorce." The said decree did not contain a specific order directing Robert to pay Mary the monthly installment payments provided for by their agreement. Jurisdiction to modify the decree as to payments for the support and maintenance of Mary was not expressly reserved.

Whether the lower court was correct in deciding that it lacked jurisdiction to grant Robert the relief requested requires us to determine the following question. Does the decree of divorce, which *approved* and *ratified* an agreement containing an installment payment provision for the wife's support, and also directing that such agreement shall *survive* the decree entered, constitute an "installment judgment for alimony and support" within NRS 125.170?[1]

We have not heretofore had occasion to consider the legal consequences flowing from such a decree. Robert here contends that the lower court's action in approving

---

[1]The respondent, Mary, contended that the installment support provision should be considered as part of the property settlement, and not alimony or support, citing Krick v. Krick, 76 Nev. 52, 348 P.2d 752. In the Krick case the decree, by express language, provided that the monthly payments were a part of the property settlement and a part of the consideration received by the wife for her release of a community interest in a business. The agreement contains no such provision in the instant case. A fair reading of it compels the conclusion that the monthly support provision is in addition to the property disposition provided for in separate paragraphs and is completely independent thereof.

and ratifying the agreement had the legal effect of merging the agreement into the decree, with the result that an *installment judgment* for alimony was entered. This being so, he then urges upon us that, by statute, NRS 125.170, jurisdiction to modify such installment judgment existed even though not expressly reserved.[2] On the other hand, Mary insists that the decree before us did not expressly direct Robert to make installment payments for her support; that mere approval and ratification of the agreement does not have the legal effect of merging the agreement into the decree, where there is a survival provision; that an installment *judgment* for alimony was not entered; that, in any event, the parties clearly stated their intention by an express provision in the agreement, that it could be modified only by mutual consent and not otherwise. In brief, Robert believes his rights, if any, are fixed by a *judgment* which is subject to modification by the court which entered it, while Mary contends that the *agreement* only defines their rights, with the result that no judgment exists regarding alimony which is subject to modification. We must resolve these contentions.

Before 1953, the distinction between the *approval* of an agreement on the one hand, and its *adoption* or *incorporation* on the other was recognized by this court in Lewis v. Lewis, 53 Nev. 398, 2 P.2d 131. In that case it was indicated that the *adoption* of an agreement by the trial court resulted in a merger of the agreement into the decree entered, and that a later motion to modify would be directed to the decree and not to the agreement which

---

[2]Robert based his motion to modify as to installments of alimony not accrued, upon NRS 125.170 as it existed *before* the 1961 amendment, his motion having been filed before that amendment became effective. Such amendment provided that installment judgments for alimony and support of the wife shall not be modified as to installments not accrued at the time the motion is filed, unless the court expressly retained jurisdiction for such modification. *Before* such amendment, this court in Folks v. Folks, 77 Nev. 45, 359 P.2d 92, held that such an installment judgment was subject to modification, upon production of proper evidence, even though jurisdiction to do so had not been expressly reserved. Whether the 1961 amendment could be retrospectively applied to this case, was briefed and argued. However, our disposition of this appeal does not require a determination of this point.

had been merged therein. Later, in 1948, Finley v. Finley, 65 Nev. 113, 189 P.2d 334, 196 P.2d 766, was decided. It also distinguished between the *approval* and the *adoption* of a property settlement agreement. It held that an *adoption* of such an agreement would give the wife "in addition to her contractual rights then existing the right to invoke contempt proceedings in this state and the rights of a judgment creditor in this or any other state." The language "in addition to" does not indicate that the adopted agreement became merged in the decree; rather, it would appear to indicate that the adoption of an agreement makes it a part of the decree, but does not destroy its independent existence, with the result that both contract rights and judgment rights exist. To this extent, at least, *Finley* appears to be inconsistent with *Lewis*.

In any event, it is reasonably clear that as of the date of Finley v. Finley, supra, the mere *approval* or *ratification* of an agreement made by the parties would not make it a part of the judgment or decree of divorce.

However, in 1953 the legislature amended sec. 3374, 1929 NCL, 1941 supp. (now NRS 123.080) by adding a new paragraph (now NRS 123.080(4)) reading: "If a contract executed by a husband and wife, or a copy thereof, be introduced in evidence as an exhibit in any divorce action, and the court shall by decree or judgment ratify or adopt or approve the contract by reference thereto, the decree or judgment shall have the same force and effect and legal consequences as though the contract were copied into the decree, or attached thereto."

We believe that this amendment accomplished two things. First, it declared the legislative intent to eliminate the distinction theretofore existing between a ratification or approval of an agreement by the court, and its adoption of it. Second, it provided for the merger of an agreement which had been either ratified, or adopted, or approved by the court, into the decree entered, for we consider the language "as though the contract were copied into the decree, or attached thereto," to mean a

merger. Though this be true, it is our opinion that NRS 123.080 (4) does not govern the disposition of the case before us. Here the parties specifically provided by their agreement that it "shall not be merged in any decree or judgment, but shall survive the same and shall be binding and conclusive on the parties hereto, their heirs, executors, administrators and assigns for all time." In addition, they particularly specified that their agreement could not be altered or modified except by a further written agreement. Furthermore, the decree entered did not merely approve their agreement; it expressly directed that the agreement survive. Under such circumstances, it would be manifestly improper to invoke the concept of merger.

The effect, if any, of NRS 123.080 (4) upon a Nevada decree which approves an agreement, but directs that it shall survive was considered by the Connecticut Superior Court in Curtis v. Curtis, 22 Conn.Sup. 349, 173 A.2d 137, 139, affirmed by the Supreme Court, 148 Conn. 733, 173 A.2d 140. The court stated:

"The plaintiff seeks to avoid the effect of the language in the decree by relying on § 123.080 of the Nevada Revised Statutes, which provides in part as follows: 'If a contract executed by a husband and wife, or a copy thereof, be introduced in evidence as an exhibit in any divorce action, and the court shall by decree or judgment ratify or adopt or approve the contract by reference thereto, the decree or judgment shall have the same force and effect and legal consequences as though the contract were copied into the decree, or attached thereto.'

"By the terms of this statute it is undoubtedly true that if the agreement had been submitted, as it was, to the Nevada court and had the court 'approved' it, as it did, and had said nothing further with reference thereto, the agreement would have become a part of the decree and would now be enforceable as a foreign judgment. However, the Nevada court went further with the provision that although it approved of the agreement it is to be recognized as a continuing agreement and not

merged in the decree. It seems to this court that it would be an anomaly to enforce the Nevada decree as such contrary to the very provisions of the decree." We agree with the Connecticut court. To hold otherwise would be to disregard not only the expressed intention of the parties, but the decree itself approving such intention. In our view, the support clause in an agreement should, in accordance with ordinary contract principles, survive a subsequent decree if the parties so intended, and if the court directs such survival.[3]

The appellant, Robert, has cited the following cases in support of his contention that where a court has the power to modify as to installments not accrued, a provision in an agreement, adopted by the court prohibiting such a modification, is void. Simpson v. Superior Court, 87 Ariz. 350, 351 P.2d 179; Goldman v. Goldman, 282 N.Y. 296, 26 N.E.2d 265; Adler v. Adler, 373 Ill. 361, 26 N.E.2d 504; Miller v. Miller, 317 Ill.App. 447, 46 N.E.2d 102; Parmly v. Parmly, 125 N.J.Eq. 545, 5 A.2d 789; Prime v. Prime, 172 Ore. 34, 139 P.2d 550. None of those cases involved a decree expressly directing survival of the agreement. Had the decree before us not directed survival of the agreement, we would be required to determine what effect should be accorded the provision of the approved agreement that modification could occur only by further written agreement. It is evident that such a determination is not required in this case.

Robert further insists that Nevada has recognized that the spouses' agreement is not binding upon the court in the original divorce proceedings. This is unquestionably true. Lewis v. Lewis, 53 Nev. 398, 2 P.2d 131; Drespel v.

---

[3]It is of interest to note that Nevada's policy has been to enforce the parties' intention, if possible, in post-divorce proceedings. In Aseltine v. District Court, 57 Nev. 269, 62 P.2d 701, where the agreement merged into the decree, it was stated that "it was the intention of the court that the intention of the parties, as expressed in the agreement, should be made effective." Accordingly, it was held that the court had jurisdiction to entertain the former husband's request to modify as to alimony because *the agreement* which had merged into the decree, indicated such to be the parties' intent; the fact that the decree did not specifically reserve jurisdiction made no difference under such circumstances.

Drespel, 56 Nev. 368, 45 P.2d 792, 54 P.2d 226. He suggests that we should extend that doctrine to permit a post-divorce revision of a nonmerged agreement. We decline to do so. The distinction between the court's power in the original divorce proceeding either to accept or reject, in whole or in part, the support agreement offered, and its power to revise it following approval and the direction that it survive the decree is clear.

We therefore conclude that NRS 123.080 (4) does not apply to a decree directing survival of an approved agreement; that the installment payment provisions of the agreement survive such decree; that the post-divorce level of support is controlled by the agreement; that the decree does not constitute an installment judgment for alimony and support within NRS 125.170; and that the lower court did not have jurisdiction to grant the relief requested.

Affirmed.

BADT, C. J., and MCNAMEE, J., concur.