## ANTHONY FERNANDEZ, Appellant, v. JENNIFER FERNANDEZ, nka JENNIFER ROTHMAN, Respondent.

No. 51423

February 4, 2010

222 P.3d 1031

*Radford J. Smith, Chtd.*, and *Radford J. Smith*, Henderson, for Appellant.

*Lemons Grundy & Eisenberg* and *Robert Eisenberg*, Reno; *Ecker & Kainen, Chtd.*, and *Andrew L. Kynaston*, Las Vegas, for Respondent.

Before PARRAGUIRRE, C.J., DOUGLAS and PICKERING, JJ.

## OPINION

By the Court, PICKERING, J.:

This is an appeal by the father of minor children from an order denying a motion to modify child support under NRS 125B.145. The trial court held that it was "not bound" by NRS 125B.145 because the parties "previously agreed in a stipulation and order modifying the Decree of Divorce that neither party [would] seek modification of child support." In the trial court's view, this made the child support order nonmodifiable, so long as the father had "sufficient means (assets and/or income) to meet the agreed upon child support obligations."

The motion to modify alleged that the father's monthly gross income had dropped more than 80 percent, to the point his child

support obligation exceeded it. The mother's circumstances, meanwhile, had improved to the extent that her assets and gross monthly income equaled or outmatched his. Declining to apply NRS Chapter 125B's modification provisions to these facts was error. Stipulated or not, the obligation the father sought to modify was incorporated and merged into the decree as an enforceable child support order. State and federal statutes give child support orders super-legal reach. Because children's needs and parents' circumstances can change unpredictably over the life of a child support order, NRS Chapter 125B provides for their periodic review and modification—up or down—as changed circumstances dictate. The statutory scheme does not admit a child support order that cannot be modified based on a material change in circumstances.

The father's motion presented facts that, if true, qualified for relief. He did not need to wait until he was missing court-ordered child support payments or in financial peril before being heard under NRS 125B.145 and its related statutes, NRS 125B.070 and NRS 125B.080. We therefore reverse and remand.

## I.

The parties had two children during their brief marriage, which ended in a joint petition for divorce that was granted in August 1998. At the time they divorced, the couple owned two houses free and clear and had no community debt of consequence. They worked in the securities industry, he as a day trader and she in administrative support; both held series 7 (general securities representative) licenses.

The original divorce decree divided the houses and other property between the couple and awarded them joint legal custody of the children, giving primary physical custody to the mother. In addition to alimony, the decree obligated the father to provide health insurance and to pay any uncovered medical expenses for the children, to pay for a housekeeper and either a nanny or day care, and to pay child support of $3,000 per month. Although it stated the child support was "consistent with the provisions of NRS 125B.070," in fact the award exceeded NRS 125B.070's presumptive maximum.[1] Since it did, the decree should have included findings as to the bases for the upward deviation, but didn't.

Roughly a year later, in July 1999, the trial court approved a stipulation and order to modify the decree. The modification in-

---

[1]NRS 125B.070 and NRS 125B.080 set presumptive limits on child support, keyed to the number of children and the obligor parent's gross monthly income, with a $100 minimum and $800 maximum per child per month, adjusted to the Consumer Price Index. NRS 125B.070(1)(b) requires that a support order that departs from the formula requires "findings of fact as to the basis for a different amount pursuant to subsection 6 of NRS 125B.080," which provides:

creased the father's monthly child support obligation from $3,000 to $4,000, to take effect two years later, in July 2001, and continue until the younger child reached age 18. It also added a provision requiring the father to pay for "private elementary (including preschool and kindergarten) and secondary school at a mutually agreed upon private school in Las Vegas, Nevada." The modified decree recited that the increased "child support obligation is consistent with the provisions of NRS 125B.070 and NRS 125B.080(9)." Again, it didn't include findings to explain the bases for awarding more support than the presumptive statutory guideline amounts.[2]

Another year passed in which the parties tried but failed at reconciliation. In June 2000, they returned with a new stipulation and order, which the court approved, again modifying the divorce decree. This stipulation and order replaced the mother's primary physical custody of the children with joint physical custody in both parents. Although it left the amount of the child support obligation unchanged,[3] it was this stipulation and order that purportedly made the child support obligation nonmodifiable, stating that both parties "voluntarily waive any right they may have pursuant to Chapter 125B of the Nevada Revised Statutes to seek a modification to [father's] child support obligation to [mother]." The waiver was absolute, with one exception: If the mother relocated outside of Nevada with the children without the father's consent, the father could seek to modify support.[4]

---

If the amount of the awarded support for a child is greater or less than the amount which would be established under the applicable formula, the court shall:

(a) Set forth findings of fact as to the basis of the deviation from the formula; and

(b) Provide in the findings of fact that amount of support that would have been established under the applicable formula.

NRS 125B.080(9) lists the permitted factors for deviating from NRS 125B.070's guidelines.

[2]The parties' respective appellate attorneys did not represent them in the trial court when the original decree was entered and later modified.

[3]If the change from primary physical custody with the mother to joint physical custody with both parents affected the presumptive child support obligation as calculated under the guidelines in NRS 125B.070 and NRS 125B.080, see Wright v. Osborn, 114 Nev. 1367, 1368-69, 970 P.2d 1071, 1072 (1998), and therefore the amount by which the support ordered deviated from the guidelines, this wasn't stated.

[4]The trial judge sua sponte struck this condition as contrary to public policy. On appeal, the mother offers to have the condition reinstated if this will defeat the father's argument that this removed part of the consideration for agreeing to waive statutory modification rights. Because we conclude the stipulation's waiver provision is unenforceable, we do not address this aspect of it separately.

The father filed the motion to modify underlying this appeal in 2007. The trial court declined to review the motion under NRS 125B.145. Instead, it ordered a limited hearing to address whether the waiver made the child support order nonmodifiable.

At the hearing, the trial court heard testimony from the father and reviewed current affidavits of financial condition from both parents. Acknowledging that the father's and mother's financial pictures had inverted since child support had been set, the trial court found that, "based on each [party's] purported current income, were the Court to apply the child support formula set forth in NRS 125B.070, . . . neither party would be obligated to pay child support to the other." Even so, the trial court denied the father's motion to modify. It held that "the child support provisions of the [decree and its stipulated modifications] shall not be disturbed by the Court based upon the waivers of the parties set forth therein and upon the fact that [the father] still has the ability to pay said amount from his currently held assets." Elaborating, it decreed that "the Court is not bound by the provision of NRS 125B.145 where the parties have previously agreed in a stipulation and order modifying the Decree of Divorce that neither party will seek modification of child support."

Because it found the child support order nonmodifiable, the trial court did not fully hear or make findings on the alleged bases for statutory modification. We likewise make no findings, but for purposes of assessing whether they merited further proceedings, we accept arguendo the following proffered facts as true: By 2007, when the father filed the motion to modify, his child support obligations amounted to $80,000 a year ($48,000 in monthly child support payments, $30,000 per year in private school tuition, plus insurance and uncovered medical expenses). In his banner years in the stock market (1995-2001), the father had earned sums ranging from $500,000 in the late 1990s to more than $4,000,000 in 2001. He began losing heavily in the market in 2002. With an adverse report already on his industry record, his losses eventually cost him the leverage needed to trade at the high levels he had. By 2007, he no longer traded and was earning $3,000 a month selling cars, plus interest of like amount on retained assets. The lavish second home he'd bought in Malibu had been sold, and the lion's share of his wealth had gone to retire margin debt. Last but not least, he had remarried, then either divorced or separated, and had a new child to support.

On the mother's side, she had remarried too. Although she no longer worked outside the home, her 2007 affidavit of financial condition showed passive and earned income equal to the father's, taking into account her new husband's earnings. Her household also had an additional child to support, her stepson.

The parties had comparable net worth. Each had recently sold the home s/he had received in the divorce. With the proceeds from these sales, both had mostly liquid net assets of between $1,000,000 and $1,500,000, hers being somewhat higher than his.

## II.

This appeal presents the question of whether parents can, by stipulation, eliminate or abridge a trial court's statutory authority to review and modify a child support order. The mother maintains, as she did in the trial court, that the parties' agreement to non-modifiable child support should be upheld as a matter of contract law and equity, based on her part performance. In her view, public policy has no place in the analysis when a nonmodifiability provision is invoked to prohibit downward, as opposed to upward, modification of child support.

The father sees the issue differently. In his view, when the parties incorporated the support agreement into the decree, it ceased being a matter of private contract and became a judicially imposed obligation, at which point the statutory modification provisions apply, notwithstanding the parties' agreement to the contrary.[5] He emphasizes that the statutes do not distinguish between upward and downward deviations from the formula amounts, nor do they expressly permit parties to stipulate to nonmodifiable child support orders. Relying on NRS 125B.145(1)(b), he urges that the award should have been modified to conform to the formulas in NRS 125B.070 and NRS 125B.080 without regard to changed circumstances, since more than three years had passed since the award's last review; failing that, he urges that he demonstrated sufficient change in circumstances to warrant modification.

The father has the better side of the argument on modifiability. While *Rivero v. Rivero*, 125 Nev. 410, 433, 216 P.3d 213, 229

---

[5]The mother does not dispute that the child support order and its stipulated modifications, including its provision waiving the right to seek modification, were incorporated and merged into the decree. This dispositively distinguishes *Renshaw v. Renshaw*, 96 Nev. 541, 543, 611 P.2d 1070, 1071 (1980), which was prosecuted "solely [as a] breach of contract action" and upheld a contract term for nonmodifiable support in a case in which the agreement was "neither incorporated in nor merged in the judgment and decree of the trial court." *See Day v. Day*, 80 Nev. 386, 395 P.2d 321 (1964) (a spousal support agreement is merged into the divorce decree and loses its character as an independent agreement unless both the agreement and decree direct the agreement's survival (distinguishing *Ballin v. Ballin*, 78 Nev. 224, 371 P.2d 32 (1962))). Whether and to what extent the "merger" distinction drawn in cases like *Renshaw* is supportable under modern child support statutes has been questioned, *Mazza v. Hollis*, 947 A.2d 1177, 1180-81 (D.C. 2008), but that issue is not before the court.

(2009), forecloses the father's contention that the mere passage of time entitles him to modification without regard to changed circumstances, his primary argument—that the stipulation waiving the right to seek modification of a support order for changed circumstances as provided in NRS 125B.080(3) and NRS 125B.145(4) is unenforceable—is correct. We conclude that so long as the statutory criteria for modification are met, a "trial court always has the power to modify an existing child support order, either upward or downward, notwithstanding the parties' agreement to the contrary." *In re Marriage of Alter*, 89 Cal. Rptr. 3d 849, 852 (Ct. App. 2009).

## A.

Nevada's child support statutes do not directly address whether parents can stipulate to a nonmodifiable child support order. However, they inarguably establish that child support involves more than private contract. By law, "[t]he parents of a child . . . have a duty to provide the child necessary maintenance, health care, education and support." NRS 125B.020(1). This duty "is discharged by complying with a court order for support or with the terms of a judicially approved settlement." NRS 125B.120(1). A trial court in a marital dissolution action has jurisdiction to determine custody and support of the parents' minor children, NRS 125.510; NRS 125B.080, and to award child support even though the parents have agreed none should be paid. *Atkins v. Atkins*, 50 Nev. 333, 336-37, 259 P. 288, 288-89 (1927) (citing Nev. Rev. Laws § 5840 (1912), a precursor to NRS 125.510), *partial abrogation recognized in Lewis v. Hicks*, 108 Nev. 1107, 1111-12, 843 P.2d 828, 831 (1992).

Although parents often stipulate to an appropriate child support order, even agreed-upon child support orders must be calculated and reviewed under the statutory child support formula and guidelines in NRS 125B.070 and NRS 125B.080. Thus, NRS 125B.080(2) provides that, if parents agree to a child support order, they "shall certify that the amount of support is consistent with the appropriate formula set forth in NRS 125B.070." "[I]f the amount of support deviates from the formula, the parties must stipulate sufficient facts in accordance with [NRS 125B.080(9)] which justify the deviation to the court, and the court shall make a written finding thereon." NRS 125B.080(2). The factors listed in NRS 125B.080(9) as permitting deviation—whether "greater or less than [the formula] amount," NRS 125B.080(6)—are exclusive, not illustrative. *Anastassatos v. Anastassatos*, 112 Nev. 317, 320, 913 P.2d 652, 654 (1996); *Lewis*, 108 Nev. at 1111, 843 P.2d at 831.

The trial court has continuing jurisdiction over its child support orders. *See* NRS 125.510(1)(b) (once having determined custody, a trial court may "[a]t any time modify or vacate" its support and custody orders). NRS 125B.145(4) declares that "[a]n order for the support of a child may be reviewed at any time on the basis of changed circumstances" and adds that a change of 20 percent or more in a child support obligor's gross monthly income "*shall* be deemed to constitute changed circumstances *requiring* a review for modification of the order for the support of a child."[6] (Emphases added.) Further, upon the request of a parent or legal guardian, "[a]n order for the support of a child *must* . . . be reviewed by the court at least every 3 years . . . to determine whether the order should be modified or adjusted." NRS 125B.145(1)(b) (emphasis added). Finally, NRS 125B.145(2)(b) specifies that, "[i]f the court . . . [h]as jurisdiction to modify the order and, taking into account the best interests of the child, determines that modification or adjustment of the order is appropriate, the court *shall* enter an order modifying or adjusting the previous order for support in accordance with the requirements of NRS 125B.070 and 125B.080." (Emphasis added.)

Although Nevada child support laws contain plain language applying their formula and guideline provisions to parents who stipulate to court-ordered child support, the modification statutes say nothing about whether parties can stipulate around them or, indeed, about parental agreements at all. Had the Legislature wanted to give parents the option of agreeing to a decree providing for nonmodifiable child support, it could have easily provided an exception to NRS 125B.145, as Connecticut did with its support modification statute. *See Amodio v. Amodio*, 743 A.2d 1135, 1143 (Conn. App. Ct. 2000) (discussing Conn. Gen. Stat. § 46b-86(a), which provides for modification based on changed circumstances "unless and to the extent that the decree precludes modification"). It didn't. Instead, the Nevada Legislature enacted the broadly unqualified modification statutes excerpted above. Because a child support order affects the child's interests, as much or more than the parents', we are disinclined to find that a parent can waive the modification statutes' protections. We thus interpret the modifica-

---

[6]The provision equating a 20-percent change in income with "changed circumstances" was added to NRS 125B.145 in 2003. 2003 Nev. Stat., ch. 96, § 2, at 546. Although the amendment postdated the stipulated order in this case, it applies to the motion to modify, since it clarified an existing statute, Norman J. Singer and J.D. Shambie Singer, 1A *Sutherland Statutory Construction* § 22.34 (7th ed. 2009), and is being invoked prospectively, to child support payments not yet due when the motion to modify was filed. *See Ramacciotti v. Ramacciotti*, 106 Nev. 529, 532, 795 P.2d 988, 990 (1990).

tion statutes to mean what they say, with no implied judicial exceptions. The purport of these statutes, as their unqualified language suggests, is that "the jurisdiction of the court never ends in a support matter, as long as the child is supposed to be getting support. If there is a significant change in circumstances in the parties' relative earning capacity, that can always be brought back to the court, and should be." Hearing on A.B. 3 Before the Senate Comm. on Judiciary, 65th Leg. (Nev., May 10, 1989) (Assemblyman Robert Sader's testimony).

Most courts agree that, absent a contrary statutory directive, public policy prevents a court from enforcing a purportedly nonmodifiable child support order, even if the parties stipulate to it. *See Armstrong v. Armstrong*, 544 P.2d 941, 943 (Cal. 1976) ("When a child support agreement is incorporated in a child support order, the obligation created is deemed court-imposed rather than contractual, and the order is subsequently modifiable despite the agreement's language to the contrary"); *Phillips v. Phillips*, 186 P.2d 102, 103 (Kan. 1947) (parties cannot by agreement oust the court of its continuing statutory jurisdiction over child support by agreeing to a nonmodifiable child support order); *Grimes v. Grimes*, 621 A.2d 211, 213-14 (Vt. 1992) (canvassing cases and holding unenforceable as a matter of public policy "parental agreements prohibiting or limiting the power of the court to modify child support in the future"); *Frisch v. Henrichs*, 736 N.W.2d 85, 101 (Wis. 2007) ("stipulation, which set a ceiling on child support and prevented modification in the level of child support, is not enforceable and offends public policy"); *Lang v. Lang*, 252 So. 2d 809, 812 (Fla. Dist. Ct. App. 1971) (public policy prohibits a nonmodifiable child support order); *In re Marriage of Rife*, 878 N.E.2d 775, 787 (Ill. App. Ct. 2007) (support modification statute's plain language preserved the court's authority to modify child-related provisions of the judgment, precluding any agreement to waive the right to seek child support adjustments).[7]

The mother invites us to distinguish between the children's and the parents' interests. She concedes that public policy may prohibit a ceiling on child support, since parents cannot contract away a

---

[7]Although not precisely on point, we recognized as much in *Willerton v. Bassham*, 111 Nev. 10, 25-27, 889 P.2d 823, 832-33 (1995), which concerned whether a stipulated judgment in a paternity suit prevented later judicial modification of the support adjudication. Rejecting the argument that the finality of stipulated judgments made the agreed-upon support obligation nonmodifiable, the court held that "the state has a compelling interest in seeing that any provisions for the support of a child incorporated in . . . settlement agreements are modifiable." *Id.* at 24, 889 P.2d at 832. The court characterized NRS Chapter 125B's modification provisions as "protections" that cannot be waived or avoided by agreement. *Id.* at 26, 889 P.2d at 833.

child's right to increased support if the child's needs require it. However, she argues for a different rule where a support obligor seeks a downward adjustment in child support based on changed parental circumstances. Reasoning that more support will always serve a child's interests better than less, she urges that public policy supports nonmodification agreements when applied to preclude downward modification, no matter the impact on the obligor parent who, after all, agreed to the order in the first place.

There are multiple problems with this argument, including a threshold one: The stipulated order here was general; it did not just set a floor on child support, but also a ceiling. Both parents gave up the right to seek modification—upward or downward— no matter whose circumstances changed, be it the mother's, the father's, or the children's. Enforcing the stipulation against the father's request for downward modification sanctions its enforcement against the mother seeking upward modification. The promises were inseparably paired "corresponding equivalents," which takes partial enforcement off the table. *See* Restatement (Second) of Contracts § 184 cmt. a (1981); Grace McLane Giesel, 15 *Corbin on Contracts* § 89.6 (rev. ed. 2003).

More fundamentally, neither our statutes nor public policy supports the argument that more court-ordered child support is always better for the child than less. The formula and guideline statutes are not designed to produce the highest award possible but rather a child support order that is adequate to the child's needs, fair to both parents, and set at levels that can be met without impoverishing the obligor parent or requiring that enforcement machinery be deployed. *See Barbagallo v. Barbagallo*, 105 Nev. 546, 551, 779 P.2d 532, 536 (1989) ("what really matters" under the formula and guideline statutes "is whether the children are being taken care of as well as possible under the financial circumstances in which the two parents find themselves"), *partially overruled on other grounds by Wright v. Osburn*, 114 Nev. 1367, 1368-69, 970 P.2d 1071, 1072 (1998), *as recognized in Rivero v. Rivero*, 125 Nev. 410, 437, 216 P.3d 213, 232 (2009). This is evident in NRS 125B.080(6), which requires findings to support deviations from the formula—whether the deviation "is greater or less" than the guideline amount; and in NRS 125B.145(4), which defines "changed circumstances" for modification review purposes as "a change of 20 percent or more in the gross monthly income" of the support obligor, whether the 20-percent change was up or down.

The statutes do not equate the child's best interests with perpetuating a supererogatory support order the obligor parent can no

longer meet. Our child support statutes, like those in sister states, recognize that

> parents' circumstances are subject to adversities out of their control. A serious accident, catastrophic illness, or a flagging economy and the hard times that go along with it, can all interpose a reversal of fortune that would make it impossible to satisfy a pre-set level of child support. *In such a situation, it would not be in a child's best interest to force the parent into a level of debt he or she has no ability to pay. . . .* We conclude, therefore, that the court always has the power to modify a child support order, upward or downward, regardless of the parents' agreement to the contrary.

*In re Marriage of Alter*, 89 Cal. Rptr. 3d 849, 858 (Ct. App. 2009) (emphasis added). *Accord Grimes v. Grimes*, 621 A.2d 211, 214 (Vt. 1992) ("There is a practical side to this issue [since a] clearly excessive child support order may lead . . . to collection difficulties and periodic returns to court"; "[a] support amount that, on paper, appears generous to the children becomes illusory if, for reasons related to the excessive size of the payments, collection must be coerced on a regular basis."); *Krieman v. Goldberg*, 571 N.W.2d 425, 432 (Wis. Ct. App. 1997) (to "subject a payor parent to an unreviewable stipulation for child support could jeopardize the payor parent's financial future, may have detrimental effects on the parent/child relationship and in this way would ultimately not serve the best interests of the child").

Parents of course are free to—and often do—provide support to their children in sums greater than the statutes require. But this case involves a child support order, enforceable by contempt and intended by both parents to satisfy their legal obligations of support. When agreed-upon support is incorporated into a decree, it becomes a court order. Court-ordered child support is "not a fixed obligation but one that is subject to readjustment as circumstances may direct, and the court's power of adjustment is not limited to changes in the children's favor." *Riemer v. Riemer*, 73 Nev. 197, 199, 314 P.2d 381, 383 (1957). "There is no merit in th[e] contention" that a nonmodifiable child support obligation serves the child's best interests where, as here, the obligor parent's changed circumstances allegedly make the award unreasonable. *Id.*

The trial court created its own modification standard when it justified its decision by the fact that the father still had assets he could use to pay child support, even if the support obligation ex-

ceeded his gross income. The parents' relative financial means may play a legitimate role in determining the amount of an original or modified support award. *Lewis v. Hicks*, 108 Nev. 1107, 1114 n.4, 843 P.2d 828, 833 n.4 (1992). However, the modification statutes do not support the exhaustion-of-assets test the trial court fashioned for determining whether to allow modification. The test the trial court fashioned is closer to the "undue hardship" standard in the enforcement statutes, *see* NRS 125B.140(2)(c), than the changed circumstances standard in the modification statutes. Although the trial court has discretion in how it applies the child support statutes, it commits legal error when it misinterprets or fails to follow the statutes as written, which is what occurred here. *Id.* at 1112, 843 P.2d at 831.

## B.

Because the trial court erred in declaring the modification statutes not applicable to the father's motion, we reverse and remand for proceedings under NRS 125B.145(4), NRS 125B.070, and NRS 125B.080. Two final issues remain. First, the mother maintains that her part performance of the nonmodifiability stipulation estops the father from contesting its enforceability. We disagree. The property settlement between the parties was concluded and the support obligations were set before the stipulation and order waiving modification rights was entered. The promises that were exchanged—by which the parties reciprocally waived the right to seek modification—were corresponding equivalents that can't be separated. *See* Restatement (Second) of Contracts § 184 (1979). In these circumstances, estoppel is not available to resurrect a contract right public policy invalidates. *Krieman*, 571 N.W.2d at 430-32.

The second issue concerns the scope of the proceedings on remand. This case was briefed before *Rivero v. Rivero*, 125 Nev. 410, 216 P.3d 213 (2009), was decided. *Rivero* states that, "although a party need not show changed circumstances for the district court to *review* a support order after three years, *changed circumstances are still required for the district court to modify the order*." *Id.* at 433, 216 P.3d at 229 (emphases added). This language forecloses the father's argument that NRS 125B.145(1)(b) entitles him to have the child support order modified to conform to NRS 125B.070 and NRS 125B.080, simply because more than three years passed since its last review.[8] To prevail on his modifi-

---

[8]NRS 125B.145(1)'s provision for review of child support orders every three years was added to meet federal mandates, *see* 42 U.S.C. § 666(a)(10).

cation motion on remand, *Rivero* requires the father to demonstrate changed circumstances. *Id.* Because the parties did not stipulate facts to justify deviating from the formulas and the court did not specify findings to support the initial or modified child support order, opting instead to just recite compliance with NRS 125B.070 and NRS 125B.080(9), the bases for the historical deviation from the formula amounts will have to be reconstructed, unless the father's alleged change in income, which appears to satisfy NRS 125B.145(4), is proved. *See supra* note 6.

In their supplemental briefs addressing *Rivero*, the parties express confusion over its emphasis on NRS 125B.145(2)(b), which refers to the trial court "taking into account the best interests of the child [in] determin[ing] that modification or adjustment of the order is appropriate." *Rivero*, 125 Nev. at 433, 216 P.3d at 229. The same public policy considerations that lead us to reject the argument that a downward modification cannot be in the child's best interest answer this concern. Unlike the custody setting, in which NRS 125.480(1) makes the best interest of the child "the sole consideration," in the support setting the parents' and the child's best interests are interwoven. NRS 125B.145(2)'s reference to "taking into account the best interests of the child" originated in the same set of federal mandates that, in 1997, led to the adoption of NRS 125B.145(1)'s three-year review provision and was a direct lift from 42 U.S.C. § 666(a)(10)(A)(i). Hearing on A.B. 401 Before the Assembly Comm. on Judiciary, 69th Leg., Ex. C (Nev., May 13, 1997) (Leg. Counsel Bureau Report, Background Information Regarding the Federal Welfare Reform Law and Child Support Enforcement, Attachment B). It did not change the preexisting legislative judgment that, if changed circumstances merit modification, revising the award to conform to the formula guidelines presumptively meets the child's needs. *See* NRS 125B.080(5); NRS 125B.145(4) (formerly NRS 125B.145(2)). The child's best interest, in the support setting, is tied to the goal of the support statutes generally, which is to provide fair support, as defined in NRS 125B.070 and 125B.080, in keeping with both parents' relative financial means. *Lewis*, 108 Nev. at 1114 n.4, 843 P.2d at 833 n.4 (citing *Barbagallo*, 105 Nev. at 551 n.4, 779 P.2d at 536 n.4). The child's best interest is not served by perpetuating a support order that the obligor parent's changed circumstances may make unreasonable, especially when, as alleged here, the receiving parent's financial circumstances have materially improved. We

Other states have interpreted their comparable periodic review statutes as not requiring changed circumstances for modification. *Allen v. Allen*, 930 A.2d 1013 (Me. 2009); *see also* NRS 125B.080(3).

therefore reverse and remand for further proceedings consistent herewith.

PARRAGUIRRE, C.J., and DOUGLAS, J., concur.