# IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL DALAIMO,
Appellant,
vs.
GAIL DALAIMO,
Respondent.

No. 66060

FILED

FEB 2 8 2017

ELIZABETH L. BROWN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a post-divorce decree district court order regarding a modification of child and spousal support. Eighth Judicial District Court, Family Court Division, Clark County; Charles J. Hoskin, Judge.

In March 2012, appellant Michael Dalaimo and respondent Gail Dalaimo entered into a Marital Settlement Agreement (MSA) outlining their respective obligations and property division upon divorce. Under the MSA, the parties' alimony obligations were to be nonmodifiable except by written agreement between Michael and Gail. The district court entered its decree of divorce in May of that year.

In April 2012, Michael was terminated from a lucrative position he held at CarMax after working there for about 10 years. Michael began working at another car dealership, Desert Buick GMC, 12 days after his termination. Michael's purported monthly income was reduced by more than half after he made the change in employment. Because of the work environment and the long work hours, Michael found his employment with Desert Buick unsustainable. Michael worked at Desert Buick for 11 months.

17-06858

During his employment with Desert Buick, Michael received an invitation from his father to work with him as a commercial real estate agent. After obtaining his real estate license, Michael left Desert Buick and began working with his father at Elite Realty. After beginning his employment at Elite Realty, Michael averaged a purported monthly income around 30 percent less than what he was earning at Desert Buick.

In June 2012, based on his reduction in income, Michael moved for modification of his alimony obligation. Michael argued that the nonmodifiable alimony provisions of the MSA should be set aside on public policy grounds pursuant to this court's decision in *Fernandez v. Fernandez*, 126 Nev. 28, 222 P.3d 1031 (2010). Specifically, Michael argued that alimony, like child support, should never be nonmodifiable. Finally, Michael argued that his child support obligation should be reduced.

In September 2012, the district court denied Michael's motion to modify alimony, finding that the MSA and its alimony provisions were not merged into the divorce decree and were thus out of the court's jurisdiction. But the district court did temporarily reduce Michael's monthly child support obligation based on the purported reduction in his income.

In April 2014, Gail filed a motion to set aside the district court's 2012 order reducing Michael's child support obligation, arguing that Michael misrepresented his monthly income and expenses. Michael again requested modification of alimony and an additional modification of child support. The district court again denied Michael's request to modify his alimony obligation. The district court also found that Michael was willfully underemployed, and thus, the court denied Michael's request to

further modify his child support obligation below the amount he was ordered to pay in 2012. This appeal followed.

On appeal, Michael argues that this court should hold that agreements to nonmodifiable alimony are repugnant to public policy and are therefore unenforceable. Michael also argues that the district court abused its discretion in finding him willfully underemployed and in declining to further reduce his child support obligation.[1]

*Enforceability of the nonmodifiable alimony agreement*

"Because a settlement agreement is a contract, its construction and enforcement are governed by principles of contract law." *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). As such, the district court's interpretation of a settlement agreement is subject to de novo review. *Id.*

The parties agree that our caselaw has long recognized the enforceability of nonmodifiable alimony agreements, so long as the agreement is not merged in the divorce decree, and the agreement and the decree declare that the agreement is not merged in the decree. *See Renshaw v. Renshaw*, 96 Nev. 541, 543, 611 P.2d 1070, 1071 (1980); *Rush v. Rush*, 82 Nev. 59, 60, 410 P.2d 757, 757-58 (1966); *Day v. Day*, 80 Nev.

---

[1]Michael also argues that the MSA should be set aside as unconscionable. "Generally, both procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce a [contract] clause as unconscionable." *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 553, 96 P.3d 1159, 1162 (2004) (internal quotation marks omitted). The record before us does not show that the MSA was procedurally or substantively unconscionable. Thus, we decline to invalidate the MSA on unconscionability grounds.

386, 389-90, 395 P.2d 321, 322-23 (1964); *Ballin v. Ballin*, 78 Nev. 224, 231, 371 P.2d 32, 36 (1962).

The parties also agree that the nonmodifiable alimony agreement between Michael and Gail is enforceable under existing law. However, Michael asks that we revisit our caselaw regarding nonmodifiable alimony agreements. Specifically, Michael cites to our decision in *Fernandez* for the proposition that nonmodifiable alimony agreements, like nonmodifiable child support agreements, are repugnant to public policy and should not be enforced. Gail argues that *Fernandez* is distinguishable, and the public policy considerations therein do not apply here.

In *Fernandez*, the parties entered into a post-decree stipulation, voluntarily waiving any right they may have to modifiable child support under NRS Chapter 125B. 126 Nev. at 30-31, 222 P.3d at 1033. We concluded that "a trial court always has the power to modify an existing child support order, either upward or downward, notwithstanding the parties' agreement to the contrary." *Id.* at 34, 222 P.3d at 1035 (internal quotation marks omitted). In reaching our decision, we recognized that Nevada's child support statutes do not address whether parties can stipulate to nonmodifiable child support. *Id.* However, we also recognized that "[w]hen agreed-upon support is incorporated into a decree, it becomes a court order," *id.* at 38, 222 P.3d at 1037, and "[t]he trial court has continuing jurisdiction over its child support orders." *Id.* at 35, 222 P.3d at 1035. Thus, even when parties stipulate to child support obligations, child support orders are always reviewable under NRS Chapter 125B.

Our conclusion was based in part on the statutory duty imposed upon parents "to provide the child necessary maintenance, health care, education and support." *Id.* at 34, 222 P.3d at 1035 (internal quotation marks omitted); *see also* NRS 125B.020(1). We agreed with other jurisdictions that the existence of such a statutory construct prevents nonmodifiability of child support obligations. *Fernandez*, 126 Nev. at 36, 222 P.3d at 1036 ("Most courts agree that, absent a contrary statutory directive, public policy prevents a court from enforcing a purportedly nonmodifiable child support order, even if the parties stipulate to it."). By contrast, the objectives of alimony are fundamentally different. "[T]he primary purposes of alimony . . . are to narrow any large gaps between the post-divorce earning capabilities of the parties, and to allow the recipient spouse to live as nearly as fairly possible to the station in life [ ] enjoyed before the divorce." *Shydler v. Shydler*, 114 Nev. 192, 198, 954 P.2d 37, 40 (1998) (alteration in original) (internal quotation marks and citations omitted).

Nevada's child support statutes "inarguably establish that child support involves more than a private contract." *Fernandez*, 126 Nev. at 34, 222 P.3d at 1035. However, when an agreement to nonmodifiable alimony is expressly left unincorporated and unmerged from the divorce decree, it loses its status as a court order and is therefore governed as a private contract. *See id.* at 33 n.5, 222 P.3d at 1034. We reject Michael's invitation to revisit *Fernandez* or extend its public policy rational to the nonmodifiable alimony agreement in the MSA. Therefore, we do not depart from our current precedent and hold that the nonmodifiable alimony agreement between Michael and Gail does not violate public policy. *See Rivero v. Rivero*, 125 Nev. 410, 429, 216 P.3d 213, 226 (2009)

("Parties are free to contract, and the courts will enforce their contracts if they are not unconscionable, illegal, or in violation of public policy.")

*Child support determination*

"Matters of . . . support of minor children of parties to a divorce action rest in the sound discretion of the trial court, the exercise of which will not be disturbed on appeal unless clearly abused." *Flynn v. Flynn*, 120 Nev. 436, 440, 92 P.3d 1224, 1227 (2004). Thus, we review a district court's child support decisions for abuse of discretion and "will uphold the district court's determination if it is supported by substantial evidence." *Id.*

NRS 125B.145(4) provides:

> An order for the support of a child may be reviewed at any time on the basis of changed circumstances. For the purposes of this subsection, a change of 20 percent or more in the gross monthly income of a person who is subject to an order for the support of a child shall be deemed to constitute changed circumstances requiring a review for modification of the order for the support of a child.

Thus, "a change of 20 percent or more in the obligor parent's gross monthly income requires the court to review the support order." *Rivero*, 125 Nev. at 432, 216 P.3d at 228. Although a 20 percent change in the obligor parent's monthly income requires review of a child support order, it does "not require the court to modify the order upon the basis" of the mandatory review. *Id.* Therefore, even when a review of the support order is mandatory, a court's decision to modify such an order remains discretionary.

Under NRS 125B.080(8), "[i]f a parent who has an obligation for support is willfully underemployed or unemployed to avoid an

obligation for support of a child, that obligation must be based upon the parent's true potential earning capacity." "[W]here evidence of willful underemployment preponderates, a presumption will arise that such underemployment is for the purpose of avoiding support." *Minnear v. Minnear*, 107 Nev. 495, 498, 814 P.2d 85, 86 (1991). "Once this presumption arises, the burden of proving willful underemployment for reasons other than avoidance of a support obligation will shift to the supporting parent." *Id.* at 498, 814 P.2d at 86-87.

Here, the district court found that because Michael's purported income had been reduced by 20 percent, a review of his child support obligation was mandatory. After conducting its review, the district court found that Michael was willfully underemployed because he was earning an amount below his actual earning potential, and he voluntarily caused the purported reduction in his income.[2] Since Michael failed to overcome the presumption that his willful underemployment was for the purpose of avoiding his support obligation, the district court declined to further modify Michael's child support obligation.

We conclude that substantial evidence in the record supports the district court's decision. Other than his testimony that he wanted to transition from selling cars to working in real estate, Michael did not produce sufficient evidence to prove that he was underemployed for reasons other than avoiding his child support obligation. Therefore, we

---

[2]Michael asks that this court adopt a rule requiring a district court to find that a child support obligor is underemployed in "bad faith" before it makes a determination as to willful underemployment. Because 125B.080(8), already contemplates underemployment for the purpose of avoiding a child support obligation, we decline to add a "bad faith" element to the statutory standard.

find no abuse of discretion on the part of the district court in declining to further reduce Michael's child support obligation. *See Barry v. Linder,* 119 Nev. 661, 670, 81 P.3d 537, 543 (2003) (approving a district court decision imputing income based on previous earnings where the obligor did not produce evidence besides his own self-serving testimony that he was destitute).

Accordingly, for the reasons set forth above, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

cc:  Hon. Charles J. Hoskin, District Judge, Family Court Division
M. Nelson Segel, Settlement Judge
Pecos Law Group
Greenberg Traurig, LLP/Las Vegas
Eighth District Court Clerk