FAIRFIELD POPE DAY, Appellant and Cross-Respondent, *v.* FRANCES STATTER DAY, Respondent and Cross-Appellant.

No. 5048

September 9, 1966 · · · · · · · · · · · · 417 P.2d 914

*John P. Thatcher,* of Reno, for Appellant and Cross-Respondent.

*Leslie B. Gray,* of Reno, for Respondent and Cross-Appellant.

318

# OPINION

By the Court, COLLINS, J.:

The parties were formerly husband and wife. Hereafter, appellant and cross-respondent will be referred to as Fairfield, while respondent and cross-appellant will be referred to as Frances. They were divorced in Reno in 1949. The decree approved an agreement between the parties which this court previously held was merged in the decree. Day v. Day, 80 Nev. 386, 395 P.2d 321 (1964). Frances, by remand of that action, seeks a money judgment against Fairfield for alleged arrearages under the decree. He contended in the trial court, and here, she is entitled, if at all, to a very nominal amount. The lower court awarded Frances judgment against Fairfield totaling $12,535.17, an attorney's fee of $1,500.00 and costs, from which he appeals. It limited interest at the statutory rate on the various sums totaling $12,535.17 to a time commencing January 1, 1960, from which she appeals.

Against amounts admittedly owed, Fairfield contends he is entitled to a credit of $1,972.00 paid directly to a son while attending college and prior to his 21st birthday; a credit of $1,562.20 representing tuition and living expenses paid directly to the son while attending college after reaching 21 years. He also contends there

should have been a cessation of liability to make payment to Frances for the daughter after her marriage; that the agreement between him and Frances should be construed as providing for support payments for the children rather than alimony to Frances; and that the trial court erred in awarding Frances an attorney's fee absent a showing of need.

The agreement, merged into the decree, provided payments from Fairfield to Frances to be alimony so that the money would be taxable to her rather than him under the federal income tax law. Both parties admit the agreement had that effect. Frances has paid all taxes on the sums received by her. Frances, in turn, obligated herself to support the children during their minority from such payments, and until they reached 25 years if either or both were enrolled in college. The alimony payments were to continue in accordance with a formula related to Fairfield's income, but to be reduced 50 percent in the event Frances remarried, which she did in 1956. The payments were also to be reduced 25 percent as each child reached 21 years unless attending college, in which event they were to continue until each child reached 25 years, graduated or ceased attending school.

The son entered college in 1957 but experienced academic difficulty. Frances, at the urging and with the agreement of Fairfield, for the purpose of bolstering the son's college career, stayed with him at the school through June 1958, when he quit because of scholastic problems. Thereafter Frances refused to continue the son in school. The son, at Fairfield's urging, returned to the same school in 1959, while still under 21, but quit again on April 1, 1960. The son reached 21 on March 21, 1960. He returned again but quit finally in October 1960. Fairfield paid the son directly $1,972.00 for college expenses before he reached 21 and claims the trial court erred in not giving him credit against the amount sought by and awarded to Frances.

In June 1962, while 19, the daughter married. The agreement between Fairfield and Frances did not expressly provide for reduction in the alimony payments in the event one of the children married. There is dispute

in the evidence upon the point, but the trial court found Frances continued to make a home for the daughter and contribute to her college expenses even after marriage, and adjudged Fairfield to be liable for the payments due Frances under the agreement notwithstanding the daughter's marriage. Fairfield contends he is entitled to a credit for all sums due after the daughter's wedding.

The agreement also provided Fairfield was to supply Frances each year proof of his income in order that his obligation to her under the payment formula could be determined. He failed to do this from 1950 to 1959, during which period part of the arrearage accrued because he was not paying in accordance with the formula related to his income. Though disputed, the trial court found Frances had demanded these statements and Fairfield had neglected to provide her with them.

It should be clearly noted Frances brought her motion on May 9, 1963, to determine arrearages pursuant to NRS 125.180.[1] Following an appeal to this court, Day v. Day, supra, the trial court entered its findings, conclusions and decree on arrearages October 14, 1965. Prior to that time Fairfield had never brought a motion to modify or reduce the payments found to be due Frances under the agreement merged in the decree.

We hold the judgment of the trial court on Fairfield's appeal should be upheld, but reverse and remand for further proceedings on Frances' cross-appeal.

Payments once accrued for either alimony or support

---

[1]"125.180 Judment for arrearages in payment of alimony and support.

"1. Where the husband, in an action for divorce, makes default in paying any sum of money as required by the judgment or order directing the payment thereof, the district court may make an order directing the entry of judgment for the amount of such arrears, together with costs and disbursements not to exceed $10 and a reasonable attorney's fee.

"2. The application for such order shall be upon such notice to the husband as the court may direct.

"3. The judgment may be enforced by execution or in any other manner provided by law for the collection of money judgments.

"4. The relief herein provided for is in addition to any and every other remedy to which the wife may be entitled under the law."

of children become vested rights and cannot thereafter be modified or voided. In Lockwood v. Lockwood, 160 F.2d 923 (D.C. Cir. 1947), it is stated:

"[W]e have held that a single award for the support of a wife and minor children is alimony payable to the wife and is not contingent on the minority of the children. True, the fact that the children do reach majority may be a ground for revision of the decree upon proper application, but a judgment on such an action looks only to the future and does not act in retrospect. It is well settled in this jurisdiction that the trial court is without power to effect a revision or remittance of past due alimony. The trial court acted correctly in enforcing the full payment of the accrued alimony."

To a similar effect is Shuff v. Fulte, 344 Ill.App. 157, 100 N.E.2d 502, 506 (1951); Corbridge v. Corbridge, 230 Ind. 201, 102 N.E.2d 764, 767 (1952); Distler v. Distler, 309 Ky. 454, 218 S.W.2d 26 (1949). Nevada statute, NRS 125.170[2] also commands such a result, at least as to alimony and support of the wife. Likewise NRS 125.140(2)[3] allows the trial court to "modify or vacate" an award for care, education, maintenance and

---

[2]"125.170 Installment judgments for alimony not accrued cannot be modified unless court expressly retained jurisdiction at final hearing.

"1. In divorce actions, installment judgments for alimony and support of the wife shall not be subject to modification as to accrued installments. Installments not accrued at the time a motion for modification is filed shall not be modified unless the court expressly retained jurisdiction for such modification at the final hearing. The provisions of this subsection apply to all such installment judgments whether granted before or after July 1, 1961.

"2. The provisions of this section shall not preclude the parties from entering into a stipulation as to accrued installments prior to the time a motion for modification is filed."

[3]"125.140 Disposition of and provision for children by the court; continuing jurisdiction of the district court.

\* \* \* \* \*

"2. In actions for divorce the court may, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody, care, education, maintenance and support of such minor children as may seem necessary or proper, and may at any time modify or vacate the same."

support of children, but even that authority implies a prospective rather than retroactive modification or vacation. Here the trial court refused a retroactive modification and we do not disagree. Certainly the trial court is not required to make such a modification.

We feel the same authority cited above governs the payments made by Fairfield directly to his son and for which he now claims credit against arrearages owed to Frances.

As to the attorney's fee awarded Frances pursuant to NRS 125.180(1),[4] we feel a different rule applies than in an allowance for suit money provided for in NRS 125.040,[5] as recently construed in Allis v. Allis, 81 Nev. 653, 408 P.2d 916. NRS 125.180 (1) has for its purpose the entry of a money judgment where arrearages under the divorce decree are accrued and vested, while NRS 125.040 has for its purpose the discretionary award of suit money to the wife by the trial court upon her showing of necessitous circumstances. Allis v. Allis, supra. The trial court in its award did not violate its discretion

---

[4]"125.180 Judgment for arrearages in payment of alimony and support.

"1. Where the husband, in an action for divorce, makes default in paying any sum of money as required by the judgment or order directing the payment thereof, the district court may make an order directing the entry of judgment for the amount of such arrears, together with costs and disbursements not to exceed $10 and a reasonable attorney's fee."

[5]"125.040 Allowances and suit money for wife during pendency of action.

"In any suit for divorce now pending, or which may hereafter be commenced, the court, or judge, may, in its discretion, upon application, of which due notice shall have been given to the attorney for the husband if he has an attorney, or to the husband if he has no attorney, at any time after the filing of the complaint, require the husband to pay such sums as may be necessary to enable the wife to carry on or defend such suit, and for her support and for the support of the children of the parties during the pendency of such suit. A court or judge may direct the application of specific property of the husband to such object, and may also direct the payment to the wife for such purpose of any sum or sums that may be due and owing the husband from any quarter, and may enforce all orders made in this behalf as provided in NRS 125.060."

to the amount awarded under all the circumstances. We find no error.

Frances' cross-appeal from the judgment of the trial court denying her interest on the arrearages found due prior to January 1, 1960, is good and we reverse. The reasoning of the trial court in such action by it is not clear from the record. The court adopted Fairfield's authorities upon this point as its ruling, and held Frances was either estopped from claiming interest on arrearages prior to January 1, 1960, or that she had made an election between two inconsistent rights. Within six months following the granting of the decree of divorce in 1949, Frances filed a motion to modify the decree on the ground that she was misled by Fairfield's attorney. This motion has never been decided and both parties have abandoned any further effort regarding it. This, Fairfield contends, is the election by Frances of a right inconsistent with her motion to determine arrearages and reduce them to judgment. Fairfield cites Rule XLV of the District Court Rules (NCL 1929, Vol. 4, p. 2484)[6] and contends a motion under this rule suspended the operation of the judgment and all proceedings under it. Rule XLV has since become NRCP 60(b)[7]. Rule XLV

---

[6]"Vacating judgments and orders.—Time to amend—No judgment, order, or other judicial act or proceeding, shall be vacated, amended, modified, or corrected by the court or judge rendering, making, or ordering the same, unless the party desiring such vacation, amendment, modification, or correction shall give notice to the adverse party of a motion therefor, within six months after such judgment was rendered, order made, or action or proceeding taken."

[7]"(b) Mistakes; Inadvertence; Excusable Neglect; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud, misrepresentation or other misconduct of an adverse party which would have heretofore justified a court in sustaining a collateral attack upon the judgment; (3) the judgment is void; or, (4) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that an injunction should have

apparently was never construed by this court. However, the point was clearly settled when NRCP 60(b) was adopted, because it specifically provides, "A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation." That, we hold, is the construction to be accorded Rule XLV. Therefore, until Frances' motion under Rule XLV was determined, which it never has been, the judgment was final and its operation not suspended. Furthermore, the trial court specifically found Fairfield had a mandatory duty to provide the sworn statements and certificates each year and that Frances had repeatedly requested the statements for the years 1950 to 1959, inclusive. We find there was no basis for the court below to refuse the award of interest on either the doctrine of estoppel or laches.

Therefore we hold Fairfield's appeal is not well taken and we sustain the lower court's judgment in favor of Frances.

On Frances' cross-appeal we reverse the ruling of the lower court and remand the cause for the calculation and award of interest on the arrearage adjudged to be due her.

ZENOFF, D. J., concurs.

THOMPSON, J., concurring:

I agree with some of the views expressed by Mr. Justice Collins, but not all of them. Therefore, I shall state my views separately.

By motion pursuant to NRS 125.180, Frances Day, the former wife of Fairfield Day, sought an order directing the entry of judgment for the amount of arrears claimed to be due for her support under a Nevada divorce judg-

---

prospective application. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than six months after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

ment entered on April 7, 1949.[1] A threshold issue as to whether their written property settlement and support agreement were merged into the divorce judgment, and the support provisions thereof susceptible to an NRS 125.180 proceeding, was the subject of our opinion in Day v. Day, 80 Nev. 386, 395 P.2d 321 (1964). There we held the proceeding permissible and remanded the matter for resolution of the motion to fix arrears. This appeal by Fairfield and cross-appeal by Frances is from the district court's determination of that motion. That court found that Frances was entitled to judgment in the sum of $12,535.17, plus interest at the rate of 7 percent per annum from January 1960, plus costs and attorney fees. The court refused to allow interest on arrearages prior to January 1960.

Fairfield's appeal assigns three errors. First, that the lower court mistakenly failed to allow him credit for $3,534.20 in ascertaining arrearages. That money was paid directly to his son, Fairfield, Jr., for tuition and living expenses while attending Harvard. Second, that the court should have recognized the marriage of his daughter, Estella, as terminating his obligation to make further payments on her account. Finally, that the court lacked power to award counsel fees absent a showing that Frances, his former wife, was in "necessitous circumstances." The cross-appeal of Frances claims that error occurred when the court refused to allow interest in the amount of $7,644.17 on arrearages between January 1, 1950 and January 1, 1960.

Before deciding these issues, one should first note the

---

[1]NRS 125.180 provides: "1. Where the husband, in an action for divorce, makes default in paying any sum of money as required by the judgment or order directing the payment thereof, the district court may make an order directing the entry of judgment for the amount of such arrears, together with costs and disbursements not to exceed $10 and a reasonable attorney's fee.

"2. The application for such order shall be upon such notice to the husband as the court may direct.

"3. The judgment may be enforced by execution or in any other manner provided by law for the collection of money judgments.

"4. The relief herein provided for is in addition to any and every other remedy to which the wife may be entitled under the law."

support provisions of the Day agreement which was merged into the divorce decree and, thereby, became a judgment for support. The agreement expressed three purposes: to settle property rights, to provide for the support of the wife, and to provide for the custody, education and support of the two minor children, Fairfield, Jr. and Estella. The mother was given custody, the father visitation rights, and they were to consult on major decisions affecting the welfare of the children. The relevant provisions regarding support obligated Fairfield to pay Frances "for her maintenance and support" a base sum of $9,000 yearly in equal monthly installments of $750. That sum represented 50 percent of his estimated annual future income. A provision for increase or decrease on the basis of Fairfield's income above or below $18,000 per year was inserted. Fairfield was to furnish a sworn statement of his income each year.

The amounts payable by Fairfield were to be automatically reduced by 50 percent should Frances remarry, and by 25 percent when either child became 21 years old, except that if such child was in college the reduction would not occur until the child became 25 years old, graduated from college or ceased attending, whichever first happened. In an effort to insure tax deductibility to Fairfield, all payments were to be made to Frances and she was obliged to support and educate the children.

Frances remarried in 1956. The daughter, Estella married in June 1962, became 21 years old in 1964, but continued her schooling. The son, Fairfield, Jr., became 21 years old in March 1960, and continued college for a while thereafter.

The main contention of Frances is that the payments ordered are alimony because specifically made for "her support and maintenance," to allow Fairfield a maximum income tax deduction. Since NRS 125.170 precludes modification of accrued alimony installments, and as Fairfield's request is, in realty, to modify the judgment, he must fail.[2] On the other hand, Fairfield argues that a

---

[2]NRS 125.170 provides: "1. In divorce actions, installment judgments for alimony and support of the wife shall not be subject to modification as to accrued installments. Installments not

fair construction of the payment provisions compels the conclusion that the payments were for alimony and child support. To rule otherwise would exalt form over substance. Therefore, he contends that NRS 125.170 does not bar his request for credits, and, that equitable considerations should have persuaded the lower court to allow his request. As I view this matter, we need not decide whether the payments required by the judgment are alimony, or alimony and child support, for, assuming the latter, the lower court acted within permissible limits of discretion in refusing credits for the sums paid by Fairfield directly to his son, and in ruling that his daughter's marriage did not affect his obligation to pay.

1. Direct payments to son. There is abundant authority for the proposition that accrued payments for alimony or child support may not be modified, since modification generally looks to the future and does not act retroactively. See Lockwood v. Lockwood, 160 F.2d 923 (D.C. Cir. 1947) and other authorities cited by Justice Collins; also, Annot., 6 A.L.R.2d 1277. However, I do not consider those authorities controlling on the issue of credits. The father does not here seek to modify the judgment. He states simply that he has paid $3,543.20 directly to his son for college expenses and should be allowed credit therefor. Special considerations of an equitable nature may justify a court in crediting payments made directly to a child rather than to the former wife for the child. Briggs v. Briggs, 178 Ore. 193, 165 P.2d 772 (1946); Mooty v. Mooty, 131 Fla. 151, 179 So. 155 (1938); Annot., 2 A.L.R.2d 831. The issue is one addressed to the discretion of the trial court, and the task on review is to decide whether that discretion was exercised within permissible limits.

No one particularly favors a double payment. On the other hand, there is merit in the notion that the method

accrued at the time a motion for modification is filed shall not be modified unless the court expressly retained jurisdiction for such modification at the final hearing. The provisions of this subsection apply to all such installment judgments whether granted before or after July 1, 1961.

"2. The provisions of this section shall not preclude the parties from entering into a stipulation as to accrued installments prior to the time a motion for modification is filed."

of payment directed by the judgment be followed. The seeds of further controversy may be sown when that method is unilaterally departed from. Here, the father was in arrears at the time he made direct payments to his son. Furthermore, the father and mother were not in accord as to the advisability of college for Fairfield, Jr. The lad's school record had been poor. Indeed, the conflicting information presented to the trial court may reasonably be read as indicating that Fairfield, Jr., attended Harvard only to please his father and for no other purpose. In these circumstances, we cannot rule that the lower court abused its discretion in refusing credit. Cf. Goodman v. Goodman, 68 Nev. 484, 236 P.2d 305 (1951).

2. The daughter's marriage. The father urges that the trial court should have treated his daughter's marriage as automatically reducing his support obligation by 25 percent. The merged agreement for support did not so provide, nor did the father ever seek to modify the judgment following Estella's marriage. Each case cited to support his claim was a modification proceeding [Crook v. Crook, 80 Ariz. 275, 296 P.2d 951 (1956); Peters v. Peters, 14 App.Div.2d 778, 219 N.Y.S.2d 906 (1961); Hayes v. Hayes, 156 S.W.2d 34 (Mo.App. 1941); Davis v. Davis, 96 F.2d 512 (D.C. App. 1938)], and may be read to stand for the proposition that the marriage of a minor daughter may sometimes persuade a court to exercise its discretion in favor of modification upon appropriate application therefor. Such an application was not made in this case. The only motion before the court was the mother's motion to fix arrears. In this context, I think that the lower court made the correct ruling.

3. Counsel fees. Fairfield contends that the district court lacked power to award fees to counsel for his former wife for services rendered in the proceeding below. His contention is bottomed on the admitted fact that Frances was not shown to be in necessitous circumstances. Unlike a suit money motion under NRS 125.040, where need is a prerequisite, (Allis v. Allis, 81 Nev. 653, 408 P.2d 916 (1965)), counsel fees may be allowed in an

NRS 125.180 proceeding whether the judgment creditor is in need or not. That statute authorizes "a reasonable attorney's fee" when an order is made directing the entry of judgment for arrears. The apparent legislative purpose is to permit a court to require the judgment debtor to pay costs and fees, since his failure to honor his judgment obligations caused the NRS 125.180 proceeding to take place.

4. Interest. The parties agree that interest on arrears which accrued between January 1, 1950 and January 1, 1960 amounts to $7,644.17. The lower court refused Frances that additional amount. I agree with Mr. Justice Collins that the doctrines of estoppel, laches, and election do not preclude her claim to interest, but wish to add a comment.

Fairfield does not challenge the principal amount found to be due as arrears for that period. A fortiori, he may not challenge interest absent an understanding between the parties that arrears would not carry interest, or a waiver of interest. Neither appears in this record. The statute directs that interest at the rate of 7 percent per annum upon money from the time it becomes due shall be allowed "upon judgments rendered by a court of this state." NRS 99.040(3). A judgment directing installment support payments falls within the statute. See also: Annot., 33 A.L.R.2d 1455.