COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| ALAN LESLIE WILLIAMS, | | No. 08-11-00212-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 393rd District Court |
| | § | |
| JO-ANN WILLIAMS, | | of Denton County, Texas |
| | § | |
| Appellee. | § | (TC # 2009-61589-393) |

# **O P I N I O N**

This is an appeal from a clarification order arising from a suit affecting the parent-child relationship. For the reasons that follow, we reverse and render.

## **FACTUAL SUMMARY**

Alan Williams filed a petition for divorce from Jo-Ann Williams. The parties entered into a mediated settlement agreement which was incorporated into the final decree. The trial court signed the decree on May 2, 2011. Alan and Jo-Ann were named joint managing conservators of their son, Matthew, and the decree contains a Standard Possession Order. It provides that if Alan resides 100 miles or less from the primary residence of the child, Alan has the right to possession on certain weekends each month and on Thursdays from 6:00 p.m. to 8:00 p.m. during the school year and from 5:00 p.m. to 8:00 p.m. if school is not in session. The decree includes the following provisions related to extended summer possession by Alan:

> With Written Notice by April 1--If ALAN L. WILLIAMS gives JO-ANN
> WILLIAMS written notice by April 1 of a year specifying an extended period or
> periods of summer possession for that year, with the exception of the summer of
> 2011 as set forth below, ALAN L. WILLIAMS shall have possession of the child
> for thirty days beginning no earlier than the day after the child's school is

dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, as specified in the written notice. These periods of possession shall begin and end at 6:00 p.m.

Without Written Notice by April 1--If ALAN L. WILLIAMS does not give JO-ANN WILLIAMS written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, ALAN L. WILLIAMS shall have possession of the child for thirty consecutive days in that year beginning at 6:00 p.m. on July 1 and ending at 6:00 p.m. on July 31.

Summer of 2011

IT IS ORDERED for the summer of 2011 that ALAN L. WILLIAMS' extended summer possession of the child shall be exercised in two increments, with the first such increment to occur beginning Friday June 17, 2011 at 6:00 p.m. and ending on Friday July 1, 2011 at 6:00 p.m. and the second increment to occur during the month of July. Designation of the July increment will be made by June 1, 2011.

The decree also specifies that Jo-Ann has a right to summer weekend access during Alan's extended summer possession as follows:

Summer Weekend Possession by JO-ANN WILLIAMS--If JO-ANN WILLIAMS gives ALAN L. WILLIAMS written notice by April 15 of a year, JO-ANN WILLIAMS shall have possession of the child on any one weekend beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on the following Sunday during any one period of the extended summer possession by ALAN L. WILLIAMS in that year, **provided that JO-ANN WILLIAMS picks up the child from ALAN L. WILLIAMS and returns the child to that same place** and that the weekend so designated does not interfere with Father's Day Weekend. [Emphasis added].

Despite the crystal clarity of this phrase, a dispute arose eight days after entry of judgment regarding Jo-Ann's right to summer weekend access during Alan's extended summer possession in 2011. It is undisputed that Alan had planned a trip to Yellowstone with the child and family friends during the July increment of his extended summer possession. Jo-Ann requested her summer weekend possession and the parties disagreed where the exchange of the child would take place for that weekend and in summers thereafter. Alan claimed that Jo-Ann should pick Matthew up in Yellowstone while Jo-Ann countered that the exchange had to occur at Matthew's

residence. Consequently, eight days after the trial court signed the decree, Jo-Ann filed a motion to clarify the trial court's order for possession or access. Although Jo-Ann did not cite Section 157.421 of the Texas Family Code as the basis for her motion to clarify, she stated the standard for clarification found in that statute by alleging that certain "portions of the order may not be specific enough to be enforceable by contempt . . ." and she requested that the trial court construe and clarify the terms of its prior order to make the provisions more specific. *See* TEX.FAM.CODE ANN. § 157.421 (West 2008). She also sought attorney's fees. After a hearing, the trial court entered an order finding that the decree of divorce should be clarified, ordering Alan to comply with the terms of the clarifying order, and providing that the clarifying order may be enforced by contempt. The order contained the following provisions:

1. Jo-Ann Williams is entitled to possession of the child Matthew Williams (the 'Child') on the following dates and times: July 1, 2011 at 6:00 p.m. until July 3, 2011 at 11:00 p.m. The parties will meet at 11:00 p.m. to exchange the child, July 3, 2011, at Cinemark Movie parking lot, 5655 Frisco Square Blvd, Frisco, Tx.

2. Alan Williams shall surrender the Child to Jo-Ann Williams at the beginning of the period of possession referred to above at the following location: Prairie House Restaurant, 10001 Highway 380, Cross Roads, Tx.

3. Jo-Ann Williams shall return the child to Alan Williams at the end of the period of possession referred to above at the following location: Prairie House Restaurant, 10001 Highway 380, Cross Roads, Tx.

4. For all future Summer Weekend Possession by Jo-Ann Williams after 2011, as provided on pages 10 and 11 of the Decree, the following provisions apply: For Jo-Ann Williams' Summer Weekend Possessions, drop off (at the beginning of her period of possession) and pick-up (at the end of her period of possession) shall occur at the Prairie House Restaurant (address above).

Alan concedes that sections 1 through 3 of the clarification order are moot, but he complains about section 4 in this appeal.

## CLARIFICATION UNDER SECTION 157.421

Alan raises two issues in his attack on the clarification order. In his first issue, he contends clarification was improper because the decree was unambiguous. In the second issue, he claims that the clarification order made an impermissible substantive change. Jo-Ann counters with three arguments: (1) Alan has waived error; (2) the trial court's plenary power to modify the divorce decree is not limited by Chapters 156 and 157 of the Family Code; and (3) the trial court's order is not a substantive change of the divorce decree.

The parties entered into a mediated settlement agreement (MSA) which was incorporated into the final decree of divorce. An MSA is binding on the parties if the agreement (1) provides in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation; (2) is signed by each party to the agreement; and (3) is signed by the party's attorney. TEX.FAM.CODE ANN. § 153.0071(d)(West 2008). The MSA here strictly complies with these requirements. Subsection (e) specifies that if an MSA meets the requirements, a party is entitled to judgment. TEX.FAM.CODE ANN. § 153.0071(e). Notwithstanding subsections (d) and (e), a court may decline to enter a judgment if a party was a victim of family violence such that his or her decision-making ability was impaired and the agreement is not in the best interest of the child. The final decree of divorce specifies that the agreement was in the child's best interest and no allegations of family violence have been lodged. Entry of judgment on the MSA was proper.

## Standard of Review

This appeal was transferred to us from the Second Court of Appeals in Fort Worth. Pursuant to Rule 41.3 of the Texas Rules of Appellate Procedure, we are to apply the precedent of that court. And they have spoken clearly that the standard of review is *de novo*:

> When an appellate court concludes that contract language can be given a certain or definite meaning, then the language is not ambiguous, and the appellate court is obligated to interpret the contract as a matter of law. *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex.1999); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A contract is not ambiguous merely because parties to an agreement have different interpretations of a term or phrase. *DeWitt*, 1 S.W.3d at 100; *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)(op. on reh'g). A contract is ambiguous only if, after the application of established rules of construction, an agreement is still susceptible to more than one reasonable meaning. *DeWitt*, 1 S.W.3d at 100; *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996).

*Commercial Structures and Interiors, Inc. v. Liberty Education Ministries, Inc.*, 192 S.W.3d 827, 832 (Tex.App.--Fort Worth 2006, no pet.).

## Modification During Plenary Power?

We first address Jo-Ann's contention that the trial court could exercise its plenary power to modify the decree without reference to the clarification statutes. While that is certainly true in some circumstances, it is absolutely prohibited in cases involving an MSA. Pursuant to the Family Code, the trial court had two options. It could accept the agreement and render judgment thereon, or it could decline to render judgment upon a finding that the agreement was not in the best interest of the child due to family violence. The court could not render judgment and then modify it. We reject Jo-Ann's argument on this basis.

## Waiver?

Next, Jo-Ann contends that Alan's true complaint is an affirmative defense of *res judicata.* This argument is misplaced because Jo-Ann confuses clarification proceedings with

suits to modify an order affecting the parent child relationship. An order establishing rights of conservatorship and possession is *res judicata* of the best interest of the child. Those orders may be modified upon compliance with the modification statutes which require (1) a showing of a material and substantial change in circumstances; and (2) that modification would be in the best interest of the child. The modification statutes address substantive changes in the court order.

Clarification proceedings are by definition non-substantive. Section 157.421 of the Family Code, entitled, "Clarifying Nonspecific Order," provides in part that:

> (a)  A court may clarify an order rendered by the court in a proceeding under this title if the court finds, on the motion of a party or on the court's own motion, that the order is not specific enough to be enforced by contempt.
>
> (b)  The court shall clarify the order by rendering an order that is specific enough to be enforced by contempt.

TEX.FAM.CODE ANN. § 157.421. A court may not change the substantive provisions of an order to be clarified. TEX.FAM.CODE ANN. § 157.423(a). Any substantive changes are unenforceable. TEX.FAM.CODE ANN. § 157.423(b). Alan had no burden to plead or prove anything. Jo-Ann bore the burden to establish an ambiguity that prevented enforcement by contempt. We reject her argument on this basis.

### Is the Decree Ambiguous?

This leads us to a discussion of whether the MSA as incorporated in the decree is vague, ambiguous, or unenforceable by contempt. Jo-Ann claims that she cannot enforce her summer weekend access. Her pleadings provide insight inasmuch as she sought clarification only as to "what date the exchange of the child during Jo-Ann William's Summer Weekend Possession shall occur, and the location of such exchange." The date is specifically ascertainable from the statutory notice she is to provide Alan. Her true complaint is location. Although she argues in

her brief that there is no requirement for Alan to tell her where he will be, that was not alleged in her pleadings.

Jo-Ann attempts to create ambiguity by reciting the terms of the specific provision addressing extended summer access and then comparing it to the provision that states: "**Except as otherwise explicitly provided . . ."** Jo-Ann will surrender the child to Alan at her residence and Alan shall return him there. [Emphasis added]. We are hard pressed to find ambiguity between these clauses.

Jo-Ann signed the MSA that incorporated the terms of the Standard Possession Order. The decree tracks the Standard Possession Order verbatim and specifies that the primary custodial parent "picks up the child from the possessory conservator and returns the child to that same place." TEX.FAM.CODE ANN. § 153.312 (b)(3). There is nothing ambiguous about the phrase that Jo-Ann must pick up Matthew from Alan and return Matthew to Alan. Without question, the trial court lacked authority to order Alan to bring the child back to North Texas for the weekend. By virtue of the MSA, the decree of divorce, and the Texas Family Code, Jo-Ann must pick up Matthew from Alan and return Matthew to Alan. If Jo-Ann as the custodial parent wants weekend access during Alan's vacation, that is her right. But she is bound by contract, judgment, and statute to travel to the site of the vacation. Issues One and Two are sustained.

Stepping back for a moment from the bitterness, anger, and hostility that so frequently accompany custody litigation, any parent can recognize the purpose of the summer access statutes. Each parent ought to have an extended and uninterrupted period of time in which to vacation with the child, whether the intent is to visit grandparents, travel to Yellowstone National Park, soak up the sun on the beach, or fish in mountain streams. Such are the joyous memories of childhood.

We reverse the trial court's order of clarification and render judgment denying Jo-Ann's motion to clarify.

November 28, 2012, 2012                    _____
                                                 ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.