

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00051-CV

_____

IN THE INTEREST OF D.C., S.C., AND S.C., CHILDREN

---

On Appeal from the 360th District Court
Tarrant County, Texas
Trial Court No. 360-634631-18

---

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I. Introduction

E.C. (Father) and S.H. (Mother) were divorced in Nevada on November 12, 2004. They have three children, Daniel, Samantha, and Sally.[1] Father appeals the trial court's order clarifying his child support obligations. Father contends that (1) his child support obligations were not ambiguous, so the trial court erred in clarifying the Nevada divorce decree; (2) the trial court improperly made his clarified obligations retroactive; and (3) the Texas Attorney General's office (AG) misled the trial court about his obligations under the Nevada divorce decree. We hold that the trial court did not err, overrule Father's issues, and affirm the trial court's order.

### II. Background

#### A. The Nevada divorce decree's contested provision

The dispute centers on the child support provision of the Nevada divorce decree:

> IT IS FURTHER ORDERED, ADJUDGED[,] AND DECREED that child support for the three minor children is set at the maximum child support allowable pursuant to NRS 125B.070,[2] et seq. namely $610 per

---

[1]We use aliases to refer to the children. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

[2]Nevada Revised Statute 125B.070 was repealed effective February 1, 2020. 2017 Nev. Stat. ch. 371, §§ 13, 14(2). However, based on contemporaneous amendments impacted by its repeal, we can determine that Nevada Revised Statute 125B.070 set out the formula for determining child support. *Id.* § 12. Father's complaint is not with how his child support was initially calculated; rather, his complaint focuses on when his child support obligations for Daniel ended.

month per child for a total child support obligation of $1,830 per month. This amount of child support is reduced by the [Father's] cost of maintaining medical insurance on the minor children. This amount is further reduced to take into account the anticipated cost of transportation for visitations between [Father] and the minor children. Therefore [Father's] child support obligation is set at $1,500 per month for the three minor children beginning August 1, 2002 forward and until the minor children turn 18 years of age unless they are in high school. If the minor children are in high school then child support continues until the first to occur of the following: the minor children graduate from high school, the minor children turn nineteen (19) years of age, marry[,] or become otherwise emancipated. As each minor child emancipates, child support will be adjusted accordingly pursuant to NRS 125B.070 et[] seq.

Daniel turned eighteen less than a month after the divorce decree was signed, and Samantha and Sally turned eighteen in 2020.

## B. The Texas AG's 2018 suit

After receiving a request from Florida (the state Mother and the children were living in) to register the Nevada divorce decree, the Texas AG filed on February 14, 2018, a notification of a foreign support order under the Uniform Interstate Family Support Act (UIFSA) and, a day later, a "Motion for Clarification and Suit for Modification of Support Order (UIFSA)." The AG alleged that Father lived in Texas and that all three children lived in Florida. As counsel for the AG explained, Mother had filed proceedings in Florida to modify Father's child support, but the Florida court determined that it could not proceed until Father's obligations under the

3

Nevada divorce decree were clarified, so the Florida court sent the matter to Texas.[3]

The AG requested both a clarification and a modification of the Nevada divorce decree.

**C. Proceedings before the Tarrant County, Texas, associate judge in 2018**

On May 17, 2018, a Tarrant County associate judge signed a "Temporary Order Clarifying and Enforcing Child Support Obligation – UIFSA" in which the judge concluded that Father had been entitled to a reduction of child support when Daniel graduated from high school in May 2005 and that beginning June 1, 2005, Father's child support obligation was $1,000 per month. This order made no attempt to modify Father's child support.

Thereafter, on October 5, 2018, the associate judge signed an "Order Clarifying, Enforcing[,] and Modifying Child Support Obligation" in which the judge again concluded that Father had been entitled to a reduction of child support to $1,000 per month beginning June 1, 2005. The order also prospectively modified Father's child support for Samantha and Sally beginning November 1, 2018. In this

---

[3]Why the Florida court referred the matter to Texas is not entirely clear. We note that Father had apparently communicated with the Texas AG's office in 2014 regarding his child support obligations and that the AG had concluded that Father owed only $1,000 per month. Because Florida requested that the Texas AG file a notice of registration of the Nevada support order in February 2018, the Florida proceedings ostensibly started sometime after 2014.

appeal, Father does not dispute the prospective child support modification.[4] The distinction between a clarification and a modification, however, later becomes pertinent to our analysis. Both existed in the associate judge's October 5, 2018 order.

## D. Later proceedings before the Tarrant County, Texas, district judge

On October 9, 2018, Mother requested a de novo hearing before a Tarrant County district judge. The district judge initially set the hearing for November 28, 2018, but for reasons not reflected in the record, the hearing did not occur until January 24, 2019. On that date, the trial court signed a "Temporary Order Clarifying Child Support Obligation" in which it expressly reserved clarification for a later date.[5]

Thereafter, there were two hearings on the motion for clarification, one on June 18, 2020, and the other on November 19, 2020. The June 18, 2020 hearing was held via Zoom video conferencing and in person, but due to the difficulties that one of the participants was having with the Zoom video conferencing, the trial court reset the hearing for November 19, 2020, when all parties and attorneys could be personally present.

---

[4]The associate judge determined that Father's obligation to pay child support for Daniel ended when Daniel graduated from high school in May 2005. Curiously, the modification portion of the October 5, 2018 order does not specify the names of any children, but contextually it excludes Daniel and includes Samantha and Sally, who were both sixteen years old at the time.

[5]Regarding the district judge's January 2019 decision to reserve the clarification issue for a later date and the eighteen-month delay until June 2020 to hold the hearing, although unclear, the parties and the trial court appear to have been waiting on the Nevada Supreme Court to rule on a pending case with the same issues, but in the end, the Nevada Supreme Court "didn't do anything."

After the hearing, the district judge signed on November 20, 2020, an order in which, unlike the associate judge, the district judge determined that Father's child support obligations did not decrease when Daniel graduated from high school in May 2005. The district judge ordered that Father's child support obligation remained $1,500 per month through October 2018 and terminated only when the associate judge signed the modification order in October 2018 that took effect on November 1, 2018. By October 2018, more than a decade had passed since Daniel had graduated from high school, and Daniel was about two months shy of his thirty-second birthday. The district judge's November 20, 2020 order is six pages long and walks through her analysis. But because the district judge later signed a second judgment within the period of the trial court's plenary power and, along with it, findings of fact and conclusions of law, we do not present the November 20, 2020 order in any detail.

## E. Post-trial proceedings in 2020 and 2021

On December 21, 2020,[6] Father filed "Objections to the Court's Rendition after Final Trial and Proposed Final Order" in which he complained about the district judge's November 20, 2020 order. Father's December 21, 2020 "Objections" functioned like a motion for new trial. *See* Tex. R. Civ. P. 329b(g).

---

[6]December 20, 2020, fell on a Sunday, so any motion for new trial was due Monday, December 21, 2020. *See* Tex. R. Civ. P. 4.

On January 29, 2021, within the period of the trial court's plenary power, *see* Tex. R. Civ. P. 329b(c), (e), (h), the district judge signed her "Final Order," which contained some findings and a clarification:

*Findings*

> The Court finds there was no agreement between the parties concerning child support owed.

> The Court further finds that through October 31, 2018, the child support obligation of [Father] remained unmodified, and that there was no agreement to modify [Father's] child support obligation through that date.

*Clarification*

> The Court hereby clarifies [Father's] child support obligation as follows:

> [Father] was ordered to pay $1,500 a month in child support beginning August 2, 2002. This child support obligation was not modified until October 31, 2018. Therefore, for each month from August 2, 2002 until October 31, 2018, [Father's] child support obligation was $1,500 per month.

And on February 10, 2021, the district judge filed her findings of fact and conclusions of law. Although lengthy, we present her findings and conclusions:

**Conclusions of Law:**

This Court makes the following Conclusion[s] of Law:

1. This Court is bound by Nevada law in determining if an arrearage exists and the amount of the arrearage. After carefully reading the briefs of the parties and studying the briefs and case law, this Court comes to the following conclusions about Nevada Law.

7

2. This Court finds that Nevada Law as applied to this case is as follows:

   a. This Court may not modify a child support order without a petition for modification being filed.

   b. This Court can clarify the remaining support order back to the date of emancipation of the child after a petition to modify has been filed.

   c. This Court may not modify a Nevada order retroactively. *Ramacciotti v. Ramacciotti*, 106 Nev. 529, 532 (1990). Once the Court determines the need of child support, the calculation of such support is set forth by the formula in N.R.S. 125B.070 and is deemed law. *See* N.R.S. § 125B.080 (2019). The child support order then vests rights to the obligee and cannot be modified or adjusted. *Khaldy v. Khaldy*, 111 Nev. 374, 377, 892 P.2d 584, 586 (1995); [*s*]*ee Day v. Day*, 82 Nev. 317, 320–21, 417 P.2d 914, 916 (1966); [*s*]*ee also Ramacciotti v. Ramacciotti*, 106 Nev. 529, 795 P.2d 988 (1990). However, an order may be modified upon changed circumstances when a petition to modify has been filed. 42 U.S.C.S. § 666 (2020).

   d. The Nevada Supreme Court has held that a court may clarify the parties' existing rights under the support order. *Vaile v. Porsboll*, 128 Nev. 27, 33, 268 P.3d 1272, 1276 (2012).

   e. This court may clarify an existing support order to [take into] account emancipation but may not make a decree retroactively. [*Id.*]

   f. [F]ather's income had increased such that his support for one child was greater than his support was for two children at the time the original decree was entered.

   g. Under Nevada Law, absent a petition for modification after the emancipation of one of the obligor's children, the obligor is required to continue to pay the full amount of the support order until such petition is filed.

h. The obligor was required to make the exact payments established by the support order until petition for modification is filed and approved of by the court.

i. Based on the statutory language of N.R.S. § 125B.080 and supported by the parents' duty to provide for his or her remaining children N.R.S. § 125B.020(1), the obligor is required to continue payment of the full amount of the support order until a petition to modify is filed with the court.

j. Under Nevada Law, an agreement made by parents contrary to the support order must be filed with the court, and it is under the discretion of the Court to enforce such agreement in the best interests of the child.

k. If there had been an agreement between the parents, that agreement would more than likely be enforceable.

l. Nevada Law requires the parties to submit any and all deviations made by the parties is found in N.R.S. § 125B.070. Nev. Rev. Stat. § 125B.080 (2019). These deviations may consist of increases or decreases in the amount ordered. *Barbagallo v. Barbagallo*, 105 Nev. 546, 552 (1989). *See Fernandez v. Fernandez,* 126 Nev. 28, 34, 222 P.3d 1031, 1035 (2010).

m. Under Nevada Law, nonmodifiable agreements violate public policy. *Id.* at 33–34.

n. Under Nevada Law, a court has the duty to modify the agreement for the best interests of the child and a nonmodifiable agreement strips the court of the ability to modify such agreement. *Id.*

o. The Supreme Court of Nevada ruled in 2010 that child support involves more than the right of a private contract, and the Court interpreted that any modification statutes do not have any implied judicial exceptions. *Id.* at 34–36. *See also* N.R.S. § 125C.0649(3)(h), which does not allow modification of child support during deployment and requires any modifications to be submitted to the appropriate court for review. Nev. Rev. Stat. Ann. § 125C.0649 (2019).

9

p. Under Nevada Law, any agreement made by the parents contrary to the child support order would need to be filed with the appropriate court to make sure it does not violate public policy and the parents' duty to provide for the best interests of the child. Nev. Rev. Stat. § 125B.020(1) (2019).

q. It would violate public policy to retroactively make a child support obligee repay child support to an obligor after years of him paying the amount of support stated in the order without [F]ather going back to court to modify the same.

r. The Attorney General did not have the authority to modify the order.

s. The State of Nevada did not have the power to modify this order unless and until a modification was filed unless and until a modification was filed in a court of law.

t. The State of Florida did not have the power to modify the order unless and until a modification was filed in a court of law.

u. The State of Texas did not have the power to modify this order until a modification was filed in a court of law.

3. Through October 31, 2018, the child support remained unmodified.

4. There was never an agreement to modify [F]ather's child support through that date.

This Court made the following Findings of Fact[]:

1. Father . . . has been paying child support for his three children, [Daniel], [Samantha], and [Sally], since August 1, 2002 to Mother . . . .

2. The original amount for all three children[] was stipulated under NRS § 125B.070 as $1830.84 each month.

3. However, the Nevada trial court decreased to $1500 each month after taking into account the anticipated cost of transportation by the Father and cost of maintaining medical insurance.

10

4. The Court ordered [F]ather to pay $1500 per month in child support.

5. [Daniel] graduated from high school in May 2005.

6. From the date of [Daniel's] emancipation, Father agreed to continue to pay Mother the total amount of $1500 until July 2014.

7. From the time of emancipation, neither Father nor Mother filed a petition for modification of child support with the court.

8. The IV-D in October 2018 clarified that after the emancipation of Father's eldest child, the support of $1626.41 is now payable each month for his remaining two children.

[Findings 9 through 20 set out Father's payments from June 2005 through July 2014.]

21. In July of 2014[, F]ather received a pay record indicating that his child support was to be $1000 per month.

22. The Attorney General's pay record reflecting that his support was $1000 per month was not based upon any legal modification but a misunderstanding.

23. [M]other began receiving child support of $1000 from July 2014 forward.

24. This was not based upon an agreement of the parties, rather it was based upon an unfortunate misunderstanding.

25. The parties never entered into an agreement to modify child support.

[Findings 26 and 27 addressed Mother's attorney's fees.]

## III. Discussion

The parties do not dispute that under the Texas Family Code, the trial court was to apply Nevada law. *See* Tex. Fam. Code Ann. § 159.604.

Father raises three issues:

(1) The trial court erred by clarifying the Nevada divorce decree because clarification is authorized only if the divorce decree was unenforceable by contempt for lack of specificity and because the Nevada divorce decree was specific enough to enforce by contempt. *See* Tex. Fam. Code Ann. § 157.421(a).

(2) The trial court erred by clarifying the Nevada divorce decree to make it retroactive, which the Texas Family Code prohibits. *See* Tex. Fam. Code Ann. § 157.425.

(3) The AG improperly manipulated the trial court into not following the law.

Because Father's second and third issues are more easily disposed of, we address them first.

### A. Issue Two

In Father's second issue, he argues that the trial court's order clarifies the Nevada divorce decree and enforces the clarification retroactively in violation of Section 157.425 of the Texas Family Code. Section 157.425 states, "The court may not provide that a clarification order is retroactive for the purpose of enforcement by contempt." Tex. Fam. Code Ann. § 157.425.

As noted earlier, Nevada law applies. *See* Tex. Fam. Code Ann. § 159.604. Assuming, without deciding, that Family Code Section 157.425 also applies, Father's argument nevertheless has no merit.

Section 157.425 applies to contempt proceedings. The AG did not file a contempt proceeding, so Section 157.425 is inapposite.

Furthermore, the trial court cannot hold someone in contempt for violating an ambiguous order.

> To support a judgment of contempt, whether it be civil or criminal, Texas law requires that the underlying decree set forth the terms of compliance in clear, specific, and unambiguous terms so that the person charged with obeying the decree will readily know exactly what duties and obligations are imposed on him.

*In re Hilburn*, No. 05-20-01068-CV, 2022 WL 831547, at *7 (Tex. App.—Dallas Mar. 21, 2022, orig. proceeding) (mem. op.) (citing *In re Johnson*, 996 S.W.2d 430, 433–34 (Tex. App.—Beaumont 1999, orig. proceeding)). Section 157.425 prohibits the trial court from clarifying an ambiguous order and then, retroactively, holding a person in contempt for violating it even though, at the time the person allegedly violated the order, the order was ambiguous. *See* Tex. Fam. Code Ann. § 157.425. Father was never in jeopardy of being held in contempt retroactively or otherwise.

We overrule Father's second issue.

## B. Issue Three

In Father's third issue, in what Father asserts is a question of first impression, he blames the AG for persuading or—as Father articulates it—manipulating the trial

court into ruling erroneously and asks us to craft an equitable remedy. Father cites no authority to support this proposition and, thus, has presented nothing for our review. *See Hall v. Houstonian Inv. Grp., LLC*, 635 S.W.3d 449, 453 (Tex. App.—Texarkana 2021, pet. denied).

We overrule Father's third issue.

## C. Issue One

In his first issue, Father contends that the child support language in the Nevada divorce decree is not ambiguous because it was clear enough to enforce by contempt. *See* Tex. Fam. Code Ann. § 157.421(a). Father argues that his child support obligation was $1,500 per month until his son was emancipated in May 2005, at which time his obligation was reduced to $1,000 per month. Despite that, according to Father, he continued to pay $1,500 per month well into 2014. Father maintains that, after conferring with the Texas AG's office, he concluded that he was entitled to a credit for the years of overpayment and that he was not required to pay child support until the credit that he had accumulated had been exhausted. Despite that credit, Father asserts that he continued to make monthly payments of $1,000 per month. Father next contends that the AG, acting consistently with what it had represented to him, filed a "Motion for Clarification and Suit for Modification" on February 15, 2018. The May 17 and October 5, 2018 orders, both of which reduced Father's child support obligations to $1,000 per month after Daniel's May 2005 graduation, are consistent with Father's assertions.

14

Father contends that Section 157.421 of the Texas Family Code is the statute that governs this dispute, but he complains that nowhere in the AG's or the trial court's analysis is Section 157.421's standard articulated or applied. Father argues that before the trial court can clarify an order, the order must first be too ambiguous to enforce by contempt:

### § 157.421. Clarifying Nonspecific Order

(a) A court may clarify an order rendered by the court in a proceeding under this title if the court finds, on the motion of a party or on the court's own motion, that the order is not specific enough to be enforced by contempt.

(b) The court shall clarify the order by rendering an order that is specific enough to be enforced by contempt.

(c) A clarified order does not affect the finality of the order that it clarifies.

*Id.* § 157.421. As noted earlier, however, the trial court was applying Nevada law, not Texas law, so Section 157.421 was inapplicable. *See id.* § 159.604. However, assuming, without deciding, that Section 157.421 applies, we would still conclude that Father's argument lacks merit.

Unlike Father, the AG contends that the child support language in the Nevada divorce decree was ambiguous. At the hearing, the AG explained that it had filed its motion for clarification because it did not know how to calculate any arrears.

The AG also contends that the trial court, like it, concluded that the language was ambiguous. At the June 18, 2020 hearing, the trial court stated, "There was a

15

child support order in the state of Nevada. That child support order had some very unusual language in it." The trial court added,

> Because, again, I am trying to understand what is almost a foreign language to me because these Nevada orders are not like ours, and they don't read like ours, and they don't look like ours, and the Nevada statute doesn't look like ours, and I don't know what it means.

And when the hearing resumed on November 19, 2020, the trial court stated, "[T]he order of the Nevada court was quite honestly confusing."

We agree with the AG and the trial court that the Nevada divorce decree is ambiguous. It does not provide for an automatic stepdown in child support obligations when a child is emancipated; rather, it provides that "[a]s each minor child emancipates, child support will be adjusted accordingly pursuant to NRS 125B.070 et[] seq." There is no way of knowing how child support is adjusted without looking at "NRS 125B.070 et[] seq." Assuming Section 157.421 applies, the trial court could clarify the Nevada divorce decree in a manner consistent with Section 157.421 because the Nevada divorce decree was ambiguous.

Looking at the Nevada statutes, we start with Nevada Revised Statute 125B.140(a), which provides that a court cannot modify an order and have the modification apply retroactively:

> If an order issued by a court provides for payment for the support of a child, that order is a judgment by operation of law on or after the date a payment is due. Such a judgment may not be retroactively modified or adjusted and may be enforced in the same manner as other judgments of [Nevada].

16

Nev. Rev. Stat. 125B.140(a). Per case law, however, a modification order can be ordered retroactively—to a limited degree—to the date the motion to modify is filed. *Ramacciotti v. Ramacciotti*, 795 P.2d 988, 990 (Nev. 1990).

However, when applying Nevada Revised Statute 125B.140(a), Nevada draws a distinction between modifications and clarifications: "[I]n the family law context[,] a modification occurs when the district court's order alters the parties' substantive rights, while a clarification involves the district court defining the rights that have already been awarded to the parties." *Vaile v. Porsboll*, 268 P.3d 1272, 1276 (Nev. 2012). This principle is consistent with Texas law: "Clarification proceedings are by definition non-substantive." *Williams v. Williams*, 407 S.W.3d 770, 775 (Tex. App.—El Paso 2012, no pet.). Courts cannot use a clarification order to effect substantive changes. *Id.* Substantive changes must be effected as modifications. *Id.*

Substantive modifications to child support must be prospective. *See Ramacciotti*, 795 P.2d at 990. Retroactive modifications are prohibited. *See Khaldy v. Khaldy*, 892 P.2d 584, 586 (Nev. 1995). Modifications must comply with Nevada Revised Statute 125B.145. *Id.* at 586 & n.3; *see Day v. Day*, 417 P.2d 914, 920 (Nev. 1966) (Thompson, J., concurring) (asserting that daughter's marriage did not automatically reduce the father's child support obligation and that the father's remedy was to file a motion to modify arguing that his daughter's marriage warranted a modification reducing his obligations).

17

Turning to Nevada Revised Statute 125B.145, we learn that modifications occur only with a court order:

### 125B.145. Review and modification of order for support: Request for review; jurisdiction; notification of right to request review

1. An order for the support of a child must, upon the filing of a request for review by:

> (a) The Division of Welfare and Supportive Services of the Department of Health and Human Services, its designated representative or the district attorney, if the Division of Welfare and Supportive Services or the district attorney has jurisdiction in the case; or

> (b) A parent or legal guardian of the child,

be reviewed by the court at least every 3 years pursuant to this section to determine whether the order should be modified or adjusted. Each review conducted pursuant to this section must be in response to a separate request.

2. If the court:

> (a) Does not have jurisdiction to modify the order, the court may forward the request to any court with appropriate jurisdiction.

> (b) Has jurisdiction to modify the order and, taking into account the best interests of the child, determines that modification or adjustment of the order is appropriate, the court shall enter an order modifying or adjusting the previous order for support in accordance with the guidelines established by the Administrator of the Division of Welfare and Supportive Services of the Department of Health and Human Services pursuant to NRS 425.620.

3. The court shall ensure that:

> (a) Each person who is subject to an order for the support of a child is notified, not less than once every 3 years, that the person may request a review of the order pursuant to this section; or

(b) An order for the support of a child includes notification that each person who is subject to the order may request a review of the order pursuant to this section.

4. An order for the support of a child may be reviewed at any time on the basis of changed circumstances. For the purposes of this subsection, a change of 20 percent or more in the gross monthly income of a person who is subject to an order for the support of a child shall be deemed to constitute changed circumstances requiring a review for modification of the order for the support of a child.

5. As used in this section:

(a) "Gross monthly income" has the meaning ascribed to it in NRS 125.150.

(b) "Order for the support of a child" means such an order that was issued or is being enforced by a court of this State.

Nev. Rev. Stat. 125B.145.

Without a motion to modify and a modification proceeding, no obligation gets modified. *See Day*, 417 P.2d at 920 (Thompson, J., concurring). Even if the parents stipulate otherwise, the rule that no obligation gets modified without a court order remains true. *See Fernandez v. Fernandez*, 222 P.3d 1031, 1036–38 (Nev. 2010). If a child meets the definition of emancipation, the emancipation becomes the basis for filing a motion to modify. *Day*, 417 P.2d at 920 (Thompson, J., concurring). And after a payment accrues, courts cannot thereafter modify or void the obligation. *Id.* at 916.

Next we look at Nevada Revised Statute 125B.120, which addresses when parents discharge their child support obligations:

19

### 125B.120. Discharge of parent's obligation

1. The obligation of a parent other than that under the laws providing for the support of poor relatives is discharged by complying with a court order for support or with the terms of a judicially approved settlement.

2. The legal adoption of the child into another family discharges the obligation of the child's natural parents for the period subsequent to the adoption.

Nev. Rev. Stat. 125B.120. To comply with the Nevada divorce decree, Father had to pay $1,500 per month until the court modified its order. As the district judge correctly noted, a court did not order a modification until October 5, 2018. And once the $1,500 per month amounts had accrued, the trial court could not retroactively modify or void them. *See Day*, 417 P.2d at 916. This is precisely what the district judge in her January 29, 2021 order correctly concluded.

We overrule Father's first issue.

### IV. Conclusion

Having overruled Father's three issues, we affirm the trial court's order.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: August 31, 2022

20